116 T.C. No. 15


UNITED STATES TAX COURT


MICHAEL G. CULVER AND CHRISTINE M. CULVER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 11129-98.                    Filed April 2, 2001.


        <u>Held</u>:  Under the separate liability election
provision of sec. 6015(c)(3)(C), I.R.C., the burden of
proof is on respondent with regard to whether the
electing spouse had actual knowledge of the item giving
rise to the deficiency.  Respondent must satisfy that
burden of proof by a preponderance of the evidence.

        <u>Held</u>, <u>further</u>, respondent's burden of proof under
sec. 6015(c)(3)(C), I.R.C., is not met by mere proof of
what a reasonably prudent person would be expected to
know.

        <u>Held</u>, <u>further</u>, respondent has failed to satisfy
his burden of proving that petitioner Michael G. Culver
had actual knowledge of his ex-wife's embezzlement
income, and petitioner Michael G. Culver qualifies for
relief under sec. 6015(c), I.R.C.

Orrin L. Grover, for petitioner Michael G. Culver.

Christine M. Culver, pro se.

Nhi T. Luu-Sanders, for respondent.

SWIFT, Judge:  Respondent determined deficiencies in petitioners' 1994 and 1995 Federal income taxes and accuracy-related penalties as follows:

| Year | Deficiency | Accuracy-Related Penalty Sec. 6662(a) |
|------|-----------|----------------------------------------|
| 1994 | $12,572 | $2,514 |
| 1995 | 18,339 | 3,668 |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After settlement of some issues, the only issue for decision is whether petitioner Michael G. Culver (Michael) qualifies for relief from liability under section 6015(b) or (c).

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

At the time the petition was filed, Michael resided in Woodburn, Oregon, and petitioner Christine M. Culver (Christine) was incarcerated in an Oregon State penitentiary.

On April 22, 1978, Michael and Christine were married. From the marriage, they have two daughters and one son. Their divorce became final in February of 2000, 1 week before the trial herein on February 29, 2000.

In 1984, because of her embezzlement of funds, Christine was terminated from her employment with the County of Yamhill, Oregon. In 1984, in connection with that embezzlement, Christine entered a guilty plea to felony theft charges.

From 1987 through the date of trial on February 29, 2000, Michael was employed by the police department for the City of Woodburn, Oregon, as a code enforcement officer with responsibility for enforcement of land-use regulations and sanitary codes.

In 1989, Michael and Christine jointly purchased a residence in Woodburn, Oregon, in which they during 1994 and 1995 resided with their three children and in which Michael continues to reside as of the date of trial.

In July of 1991, Christine became employed by the City of Molalla, Oregon, as a city clerk with a salary of $1,400 per month. Molalla is a rural farming and logging town in Western Oregon's Willamette Valley and is located approximately 30 miles from Woodburn, Oregon. Thereafter, Christine received a number of significant promotions and raises. By 1994, Christine had been promoted to financial director for the City of Molalla.

From the time of Michael's and Christine's marriage in 1978 through early 1997, Christine handled the finances for the marriage.  She paid the bills, wrote the checks, and maintained the bank accounts.  Only occasionally would Michael write and sign checks.

Occasionally during the marriage, when Christine had written checks that bounced due to insufficient funds in the checking account, Michael would become angry and upset with Christine.

Christine may accurately be described as a compulsive shopper.  Christine often went on shopping sprees and bought clothes for petitioners' daughters, spending as much as $500 to $1,000 per trip.  In 1993 or 1994, petitioners purchased a big-screen television and a surround-sound audio system for their residence.  Each of petitioners' three children had a television of his or her own.

During 1992 through 1995, petitioners made a number of improvements to their residence.  Petitioners purchased a new water softener, added a front porch and a cedar fence, and installed a hot tub.  Petitioners also purchased a number of vehicles for themselves and for one of their daughters.  Most of these purchases were either completely or largely financed.

Michael's hobbies included hunting, fishing, and archery. In 1995, Michael went on a fishing trip to Alaska. Christine did not participate in Michael's hobbies.

During 1993 through 1995, the approximate total of the deposits into, and the withdrawals and payments out of, petitioners' joint checking account were as follows:

| Year | Deposits | Withdrawals |
|------|----------|-------------|
| 1993 | $88,883 | -- |
| 1994 | 92,138 | $92,081 |
| 1995 | 94,415 | 97,729 |

In September of 1996, during an audit of the financial books and records of the City of Molalla, it was discovered that during 1991 through 1996 Christine had embezzled a total of approximately $225,000 from funds she managed as financial director for the City of Molalla. Christine was immediately terminated from her employment with the City of Molalla, and State criminal charges were brought against her.

On May 22, 1997, Christine pleaded guilty to charges of aggravated theft, forgery, and official misconduct in connection with her embezzlement from the City of Molalla. Christine was sentenced to an 18-month prison term, and Christine was ordered to pay restitution of $225,000.

For 13 months, from June of 1997 until July of 1998, Christine was incarcerated as a result of the sentence relating to the above plea.

Christine carried out the embezzlement from the City of Molalla by writing improper city checks to herself and by taking cash from funds available to her as the financial director. Every week or two, Christine would write a check or take cash from the city in the amounts of $200 to $800. The checks and the cash generally were deposited into the joint checking account that she and Michael maintained. The embezzled funds (represented by the checks and the cash) were commingled by Christine with the funds available from her wages, and the embezzled funds were used by Christine to pay for family expenses and to make payments on the family debts.

During 1993, 1994, and 1995, the approximate total deposits into petitioners' joint checking account were as follows:

|  | 1993 | 1994 | 1995 |
|---|---|---|---|
| Total Deposits | $88,883 | $92,138 | $94,415 |

Specifically during 1994 and 1995, Michael and Christine received wages from their employers, and Christine received embezzlement income as follows:

|           | 1994      |              | 1995      |              |
|-----------|-----------|--------------|-----------|--------------|
|           | Wages     | Embezzlement | Wages     | Embezzlement |
| Michael   | $27,949   | --           | $28,234   | --           |
| Christine | 35,618    | $44,152      | 48,178    | $59,128      |
| Total     | $63,567   | $44,152      | $76,412   | $59,128      |

On July 7, 1998, Christine was released from prison and lived for either a month or a month and a half with Michael in the family residence. Thereafter, but for a week during the Christmas season of 1998, Christine did not live in the family residence, and through the time of trial on February 29, 2000, Christine lived in Portland, Oregon, with another person whom she met and with whom she had a relationship while in prison.

Christine prepared petitioners' 1994 and 1995 joint Federal income tax returns, and Michael and Christine both signed and timely filed the returns. On those returns, Michael's and Christine's wages were accurately reported, but Christine's embezzlement income was not reported.

On audit, respondent determined that Christine's embezzlement income represented additional unreported taxable income and that petitioners were jointly liable with respect to the tax deficiencies relating thereto.

OPINION

Generally, taxpayers filing joint Federal income tax returns are jointly and severally liable for all taxes due. See sec. 6013(d)(3).

Certain taxpayers, however, may be relieved of joint and several liability under section 6015. Michael claims that he is entitled to relief from joint and several liability under the traditional rule of section 6015(b) and also under the separate liability election of section 6015(c). Michael makes no claim for equitable relief under section 6015(f).

With regard to Michael's claim for separate liability election relief under section 6015(c), respondent claims only that Michael fails to meet the lack of actual knowledge requirement.

Section 6015(c)(3)(C) provides as follows:

(C) Election not valid with respect to certain deficiencies.--<u>If the Secretary demonstrates that an individual making an election</u> under this subsection <u>had actual knowledge</u>, at the time such individual signed the return, of any item giving rise to a deficiency (or portion thereof) which is not allocable to such individual under subsection (d), such election shall not apply to such deficiency (or portion). This subparagraph shall not apply where the individual with actual knowledge establishes that such individual signed the return under duress. [Emphasis added.]

In <u>Cheshire v. Commissioner</u>, 115 T.C. 183, 195 (2000), we addressed the meaning of the term "actual knowledge" under the separate liability election provision of section 6015(c) as follows:

We believe the knowledge standard for purposes of section 6015(c)(3)(C) is an actual and clear awareness (as opposed to reason to know) of the existence of an item which gives rise to the deficiency (or portion thereof). * * *

The provisions of the Code concerning relief from joint and several liability were expanded in 1998 in order to make relief thereunder more accessible and easier to obtain. See Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3201(a), 112 Stat. 685, 734; H. Conf. Rept. 105-599, at 249 (1998), 1998-3 C.B. 755, 1003. Section 6015(c) was added as an independent ground for relief. Generally, for a taxpayer who is no longer married, is legally separated, or has not resided with his or her spouse for a 12-month period, section 6015(c) provides, if properly elected, relief from joint and several liability to the extent of the portion of the income tax deficiency allocable to the other spouse.[1]

As the above emphasized statutory language indicates, however, the election out of joint and several liability under section 6015(c)(3)(C) will not be available if respondent

---

[1] Under sec. 6015(c)(3)(B), an election for relief from joint and several liability is to be made no later than 2 years after the date on which respondent has begun "collection activities". The statutory language does not state the earliest date on which an election under sec. 6015(c) may be made. Respondent in this case has not raised any issue as to the timeliness of Michael's election under sec. 6015(c).

"demonstrates" that the electing spouse, as of the time the joint income tax return was signed, had actual knowledge of the item that gave rise to the deficiency.  The statutory language does not expressly use the words "burden of proof", and the statutory language does not quantify the evidentiary standard respondent must satisfy in order to demonstrate the electing spouse's actual knowledge.

In Cheshire v. Commissioner, supra at 193, and in a number of other recent opinions, we have repeated the statutory language ("If the Secretary demonstrates * * * actual knowledge") without expressly using the words "burden of proof" and without discussing the quantity or level of proof that is required for respondent to demonstrate the electing spouse's actual knowledge. See also Charlton v. Commissioner, 114 T.C. 333, 341 (2000); Amankwah v. Commissioner, T.C. Memo. 1999-382.

In a number of other recent opinions, we have stated expressly that the above statutory language of section 6015(c)(3)(C) shifts the burden of proof from the electing spouse to respondent with regard to the actual knowledge element, but without quantifying the level of that burden of proof.  See Martin v. Commissioner, T.C. Memo. 2000-346 ("respondent bears the burden of showing that * * * [the taxpayer] had 'actual knowledge'"); Mitchell v. Commissioner, T.C. Memo. 2000-332 ("We note that in general under sec. 6015(c) the taxpayer has the

burden of proof * * * but for purposes of this provision, the Commissioner has the burden of proof"); <u>Wiksell v. Commissioner</u>, T.C. Memo. 1999-32 ("section 6015(c)(3)(C) places the burden to establish actual knowledge on respondent"), affd. without published opinion 215 F.3d 1335 (9th Cir. 2000).[2]

In the legislative history of section 6015(c), it is made explicitly clear that a shift of the "burden of proof" to respondent with regard to the actual knowledge element of section 6015(c)(3)(C) is intended, but no mention is made in the legislative history as to what quantity or level of proof respondent should be required to satisfy. See H. Rept. 105-364 (Part I), at 31 (1997), 1998-3 C.B. 373, 403 ("The bill contains a number of provisions designed to strengthen the rights of taxpayers in their dealings with the Internal Revenue Service. Among the more significant of these provisions are modifying the burden of proof"); H. Conf. Rept. 105-599, <u>supra</u> at 253, 1998-3 C.B. at 1007 ("if the IRS proves that the electing spouse had actual knowledge that an item on a return is incorrect, the

---

[2] Further, in a recent opinion by the Court of Appeals for the Fourth Circuit, language is used that could be read to suggest that the burden of proof with regard to the actual knowledge element of sec. 6015(c) remains on the electing spouse. See <u>Grossman v. Commissioner</u>, 182 F.3d 275, 279 (4th Cir. 1999) ("In order to obtain the benefit of that provision, sec. 6015(c), an individual must demonstrate <u>inter alia</u> that he had no 'actual knowledge'"), affg. T.C. Memo. 1996-452.

election will not apply to the extent any deficiency is attributable to such item").

As we have held, the relevant statutory language of section 6015(c)(3)(C) (namely, "If the Secretary demonstrates * * * actual knowledge") constitutes an intended shift of the burden of proof from the electing spouse to respondent with regard to whether the spouse had actual knowledge of the item in question. We also hold that the quantity or level of respondent's burden is a "preponderance" of the evidence, the traditional quantity or level of proof required under Rule 142(a) and the case law thereunder. This is the same standard to which we and other courts have, for many years, held taxpayers on questions of general tax liability, and we believe that this is the standard that Congress intended be placed on respondent under section 6015(c) with regard to the actual knowledge element. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); American Pipe & Steel Corp. v. Commissioner, 243 F.2d 125, 126-127 (9th Cir. 1957) ("* * * [the taxpayer], having invoked the jurisdiction of the Tax Court, entered the hearing burdened with the duty of establishing by at least a preponderance of the evidence that the determination made by the Commissioner was erroneous"), affg. 25 T.C. 351 (1955); Estate of Simplot v. Commissioner, 112 T.C. 130, 149-150 (1999).

Accordingly, in this case, Michael will qualify for relief from joint and several liability under section 6015(c) with

regard to the funds embezzled by Christine from the City of Molalla unless respondent satisfies his burden of establishing by a preponderance of the evidence that Michael had actual knowledge of Christine's embezzlement income.

Michael contends (in his testimony and on brief) as follows: (1) That Christine's embezzlement activity was so clever that it was hidden for 5 years not only from Molalla city officials but also from himself, (2) that the family expenditures (expenditures mostly financed) were well within the resources of petitioners based alone on their combined wage income and would not, and did not, alert him to the embezzlement income, (3) that in fact he had no clue of the embezzlement income, (4) that he did not abuse Christine or in any way force her into the embezzlement activity or knowingly benefit therefrom, (5) that through the embezzled funds Christine secretly sought to "buy" her family's love, (6) that he has been forced into bankruptcy to pay for Christine's legal fees, etc., and (7) that he and the children, rather than benefiting, have suffered greatly, financially, and mentally, as a result of Christine's embezzlement.

Michael's claims of innocence and of lack of knowledge regarding Christine's embezzlement activities and the income relating thereto are corroborated by Christine's testimony that she carried out the embezzlement activity without Michael's participation or knowledge. We find Christine's testimony

credible and persuasive.  Combined with Michael's testimony and the other evidence in this case, we conclude that respondent has not satisfied his burden of proving by a preponderance of the credible evidence that Michael had actual knowledge of Christine's embezzlement income, and we conclude that Michael qualifies for relief under section 6015(c).

Respondent argues that the family expenditures, home improvements, Michael's fishing and hunting trips, and the deposits into the joint checking account should have, and would have, given Michael actual knowledge of the embezzled income.  We find respondent's arguments as to what Michael should have known to be misplaced.  As stated and as we have held, the standard under section 6015(c) is actual knowledge, and respondent has the burden to prove Michael's actual knowledge by a preponderance of the evidence.  Further, respondent's burden of proof under section 6015(c)(3)(C) is not met by mere proof of what a reasonably prudent person would be expected to know.[3]

Arguably, the deposits into petitioners' joint bank account, in particular, would indicate that Michael should have been aware of some source of the deposits greater than his and Christine's wages and that Michael should have inquired as to what that source was (particularly in light of Christine's prior

---

[3]  We do not intend to suggest that in an appropriate case respondent's burden to prove actual knowledge may not be established by circumstantial evidence.

embezzlement activity).  We again emphasize, however, that the standard under section 6015(c) is not that of a hypothetical, reasonable person, but only that of Michael's actual subjective knowledge.  See Wiksell v. Commissioner, T.C. Memo. 1999-32 ("Petitioner further argues that section 6015(c) has changed the culpability standard from objective under section 6013(e) to subjective.  * * * Our finding was based on * * * [taxpayer's] subjective awareness of the * * * [item]"), affd. without published opinion 215 F.3d 1335 (9th Cir. 2000);[4] H. Conf. Rept. 105-599, supra at 253, 1998-3 C.B. at 1007 ("Such actual knowledge must be established by the evidence and shall not be inferred based on indications that the electing spouse had a reason to know.").

Because of our conclusion that Michael qualifies for relief under section 6015(c), we need not rule on Michael's claim of relief under section 6015(b).

To reflect the foregoing,

Decision will be entered under

Rule 155.

---

[4] For the prior history of Wiksell v. Commissioner, T.C. Memo. 1999-32, see Wiksell v. Commissioner, T.C. Memo. 1998-3, on remand from Wiksell v. Commissioner, 90 F.3d 1459 (9th Cir. 1996), revg. and remanding T.C. Memo. 1994-99.