In re Jeremy Bearl SHAFMAN and Dawn Robin Shafman, Debtors.

Dawn Robin Shafman aka Dawn R. Tenney and Dawn R. Wamsley, Plaintiffs,

v.

United States Department of the Treasury, Internal Revenue Service, Defendants.

Bankruptcy No. 99–20628.
Adversary No. 99–2033.

United States Bankruptcy Court, N.D. West Virginia.

Aug. 2, 2001.

R. Mike Mullens, Elkins, WV, Pat Genis, Washington, DC, for debtors.

Lisa Grimes Johnston, Wheeling, WV, for defendants.

Debra A. Wertman, Charleston, WV, U.S. Trustee.

## MEMORANDUM OPINION AND ORDER

L. EDWARD FRIEND, II, Bankruptcy Judge.

This matter comes before the Court pursuant to the Debtor's complaint to determine the dischargeability of a debt under 11 U.S.C. § 523. Debtor Dawn Robin Shafman ("Shafman") filed this proceeding against the United States Department of the Treasury, Internal Revenue Service ("IRS") seeking dischargeability in bankruptcy of income tax liability of approximately $23,300. The issue to be determined by the Court is whether Shafman qualifies for "innocent spouse relief" as provided for by 26 U.S.C. § 6015. The Court has jurisdiction pursuant to 28 U.S.C. § 1334. This matter is a core proceeding under 28 U.S.C. § 157.

## I. BACKGROUND

### A. Brief Factual History

This case involves a joint tax return filed for the taxable year 1991 by Shafman and her then-husband, Eliot Tenney ("Tenney").

#### 1. Shafman's Marriage and Employment

In 1989, prior to her marriage to Tenney, Shafman was raising two children from a previous marriage and was employed full-time at the Philippi Inn Restaurant ("Inn") in Philippi, West Virginia. In 1990, Tenney purchased the Inn. Shafman and Tenney were married in late 1990 or early 1991, and were divorced in 1996.[1]

Once Shafman married to Tenney, she ceased working full-time at the Inn, and instead worked part-time as a waitress on an as-needed basis, earning wages of $2.13 per hour from the Inn, plus tips from the customers. At the end of a given shift, Shafman reported her total food sales to Tenney, who calculated her tips and reported her income for tax purposes. Shafman testified at trial that she did not know how much she earned in 1991. Shafman further testified that upon receipt of her paychecks, she turned the paychecks over to Tenney.

#### 2. Shafman's Financial Involvement in Marital and Business Affairs

Shafman's job at the Inn did not involve any contact with the financial affairs of the Inn. Shafman testified that at no point did she have access to the Inn's financial records, nor was she ever involved in the Inn's bookkeeping. Tenney's other business affairs included the ownership of an ice cream parlor and maintenance of a rental property. Shafman had no involvement with these ventures. Tenney maintained a business account, to which Shafman did not have access. As far as household expenses, the couple maintained a joint checking account out of which household finances were managed. Tenney periodically gave Shafman money to deposit, and Shafman paid various household and childcare expenses out of these funds.

#### 3. Marital Expenditures

During 1991, the first year of Shafman and Tenney's marriage, the couple incurred various expenses. Through a $65,000 bank loan, the couple purchased a

---

1. Although not legally relevant to Shafman's qualification for innocent spouse relief, the Court notes that Shafman and Tenney entered into an agreement on February 2, 1996, which was made part of their Judgment and Decree of Divorce, that Tenney would pay all tax liabilities incurred during the marriage.

house in Shafman's name with Tenney as a cosigner. The couple purchased a car, financed through First National Bank. Tenney gave Shafman jewelry, including two engagement rings and a watch. Shafman testified that she herself did not make any extravagant purchases during 1991. The couple vacationed in the Bahamas in 1991. Shafman testified that this trip was a reward trip from a restaurant food supplier. Shafman's testimony at trial demonstrated no awareness, beyond normal household expenses, of the household and business finances of the couple.

### 4. Shafman and Tenney's Joint 1991 Tax Return

In 1992, Tenney and Shafman filed a joint 1040 United States Income Tax Return for the taxable year 1991 ("return"). The return was prepared on April 15, 1992 by accountant Paul W. Calhoun, and included personal and business income and expenditures. The return was signed by both Tenney and Shafman, and was received by the IRS on April 17, 1992.

On the return, Tenney and Shafman reported wages of $60,[2] a net operating loss of $25,473, and a balance due the IRS of $628. The IRS audit of the 1991 return determined that Tenney and Shafman had $87,889 in income from known sources, $95,976 in known expenditures, and $10,451 in unreported income. The IRS determined that the unreported income included $4,000 catering income, $3,150 rental income, $151 barter income, and $1150 in tip income.

### 5. The IRS Audit

Based on its audit, the IRS made a Final Report of Income Tax Examination Changes on December 20, 1994. Shafman and Tenney signed the Form 870 Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment on February 12, 1995, to which the Final Report was attached. On April 10, 1995, the IRS made an additional assessment of tax in the amount of $10,257, and a civil fraud penalty of $7693 and interest.

### B. Procedural History

On March 15, 1999, Shafman filed a petition for relief under Chapter 7 of the Bankruptcy Code, and on April 16, 1999, Shafman filed an adversary complaint seeking a declaration discharging in bankruptcy her tax liability for 1991 because it was incurred more than three years prior to the petition date. The IRS defended that under § 523(a)(1)(c) and (a)(7) of the Bankruptcy Code, the taxes were not dischargeable because Shafman and Tenney filed a fraudulent return in 1991. Shafman submitted to the IRS a request for Innocent Spouse Relief, and was notified by letter from the IRS on June 8, 2000 that she was not entitled to the relief.

The matter proceeded to trial before this Court on October 26, 2000. At the conclusion of the trial, at the request of the IRS, the Court continued the case pending the parties' receipt of a transcript of the proceedings. On February 6, 2001, the Court ordered the filing of post-trial briefs by the parties in support of their respective positions as to Shafman's entitlement to innocent spouse relief. Following a review of the evidence presented at trial and the briefs submitted by the parties, the Court finds that Shafman is not entitled to innocent spouse relief under 26 U.S.C. § 6015(b), but is entitled limit her tax liability for the taxable year 1991 under 26 U.S.C. § 6015(c).

**2.** The only W–2 form attached to the return indicates that the $60 wages were earned by Tenney from the Barbour County Board of Education. Thus, none of Shafman's earned income was reported as wages.

## II. DISCUSSION

The Internal Revenue Code ("IRC") provides that liability with respect to tax arising from a joint return by a husband and wife is joint and several. 26 U.S.C. § 6013(d)(3). However, a spouse may be relieved from liability if she proves certain circumstances. Section 6015(b) of the IRC sets forth procedures for relief from liability applicable to all joint filers. In addition to this relief, taxpayers no longer married or taxpayers who are legally separated may elect to apply for relief under § 6015(c).

### A. Innocent Spouse Relief Applicable to All Joint Filers Under § 6015(b)

Section 6015(b) [3] of the IRC sets forth the criteria for innocent spouse relief applicable to all joint filers:

(b) Procedures for relief from liability applicable to all joint filers.—

(1) In general.—Under procedures prescribed by the Secretary, if—

(A) a joint return has been made for a taxable year;

(B) on such return there is an understatement of tax attributable to erroneous items of one individual filing the joint return;

(C) the other individual filing the joint return establishes that in signing the return he or she did not know, and had no reason to know, that there was such understatement;

(D) taking into account all the facts and circumstances, it is inequitable to hold the other individual liable for the deficiency in tax for such taxable year attributable to such understatement; and

(E) the other individual elects (in such form as the Secretary may prescribe) the benefits of this subsection not later than the date which is 2 years after the date the Secretary has begun collection activities with respect to the individual making the election,

then the other individual shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such understatement.

26 U.S.C. § 6015(b)(1).

 The taxpayer bears the burden of proving that she falls within all terms of the provision. *Grossman v. Comm'r*, 182 F.3d 275, 279 (4th Cir.1999). If a taxpayer would be entitled to relief but for the knowledge requirement of subparagraph (1)(C), then to the extent that individual can establish a lack of knowledge as to a portion of the understatement, liability may be apportioned under § 6015(b)(2).[4] Therefore, to qualify for innocent spouse relief under § 6015(b), Shafman must show that 1) a joint income tax return was filed; 2) the return contained an understatement

---

**3.** This section was enacted in 1998. Prior to the enactment, the only relief from joint and several liability was provided by 26 U.S.C. § 6013(e). Under § 6013(e), innocent spouse relief was available only if the return contained a "substantial understatement" of tax stemming from "grossly erroneous" items of the other spouse. *See Lilly v. I.R.S.*, 76 F.3d 568, 571 (4th Cir.1996). The IRS admits that Shafman's claim for innocent spouse relief is appropriately considered under § 6015, rather than § 6013, because the tax liability remains unpaid.

**4.** The subsection provides that "[i]f an individual, who but for paragraph (1)(C), would be relieved of liability under paragraph (1), establishes that in signing the return such individual did not know, and had no reason to know, the extent of such understatement, then such individual shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent that such liability is attributable to the portion of such understatement of which such individual did not know and had no reason to know."

of tax attributable to the erroneous items of Tenney; 3) in signing the return, Shafman did not know or have reason to know of the understatement; and 4) it is inequitable to hold Shafman liable for the understatement, taking into account all facts and circumstances. Further, if Shafman qualifies for innocent spouse but for an inability to prove a lack of knowledge as to the entire understatement, then liability may be apportioned, under § 6015(b), and she may obtain relief for the portion for which she can prove a lack of knowledge.

■ The parties do not dispute that a joint return was filed by Shafman and Tenney.[5] The second requirement is that "on such return there is an understatement of tax attributable to erroneous items of one individual filing the joint return." 26 U.S.C. § 6015(b)(B). That there is an understatement of tax is not in dispute. However, this understatement is not attributable to the erroneous items of Tenney alone.

According to the IRS audit of the 1991 return, there was a $10,451 understatement of income, consisting of $4,000 in catering income, $3,150 rental income, $151 barter income, and $1150 tip income. Although the evidence presented at trial supports the contention that the understatement of the catering income, the rental income, and the barter income are attributable to Tenney alone, the $1150 understatement of tip income, plus any understatement of her wages, is attributable to Shafman. Subsection 6015(b)(2) allows for apportionment, but only if "but for" the knowledge requirement of subparagraph (b)(1)(C), the individual would be relieved of liability. Since Shafman can-

not meet the requirement of (b)(1)(B), it is unnecessary to analyze the remaining two elements or consider apportionment. The Court denies all relief under § 6015(b).

## B. Innocent Spouse Relief Under § 6015(c) For Taxpayers No Longer Married

Although Shafman does not qualify for innocent spouse relief under § 6015(b), she does qualify for limited liability under § 6015(c).

### 1. Subsection 6015(c)

Subsection 6015(c), applicable only to taxpayers no longer married or taxpayers legally separated or not living together, provides, *inter alia*, that:

(1) In general.—Except as provided in this subsection, if an individual who has made a joint return for any taxable year elects the application of this subsection, the individual's liability for any deficiency which is assessed with respect to the return shall not exceed the portion of such deficiency properly allocable to the individual under subsection (d).

(2) Burden of proof.—Except as provided in subparagraph (A)(ii) or (C) of paragraph (3), each individual who elects the application of this subsection shall have the burden of proof with respect to establishing the portion of any deficiency allocable to such individual.

(3) Election.—

(A) Individuals eligible to make election.—

(i) In general.—An individual shall only be eligible to elect the application of this subsection if—

**5.** The parties also do not dispute that Shafman met the statutory time requirements to qualify for innocent spouse relief as set forth in 26 U.S.C. § 6015(b)(1)(E). Under this subsection, Shafman must "elect[ ]... the benefits of this subsection not later than the date

which is [two] years after the date the Secretary has begun collection activities with respect to the individual making the election." The IRS has not initiated any collection activity with regard to Shafman.

(I) at the time such election is filed, such individual is no longer married to, or is legally separated from, the individual with whom such individual filed the joint return to which the election relates; or

(II) such individual was not a member of the same household as the individual with whom such joint return was filed at any time during the 12–month period ending on the date such election is filed.

(ii) Certain taxpayers ineligible to elect.—If the Secretary demonstrates that assets were transferred between individuals filing a joint return as part of a fraudulent scheme by such individuals, an election under this subsection by either individuals shall be invalid (and section 6013(d) shall apply to the joint return.

. . . .

(B) Time for election.—An election under this subsection for any taxable year may be made at any time after a deficiency for such year is asserted but not later than [two] years after the date on which the secretary has begun collection activities with respect to the individual making the election.

(C) Election not valid with respect to certain deficiencies.—If the secretary demonstrates that an individual making an election under this subsection had actual knowledge, at the time such individual signed the return, of any item giving rise to a deficiency (or portion thereof) which is not allocable to such individual under subsection (d), such election shall not apply to such deficiency (or portion). This subparagraph shall not apply where the individual with actual knowledge establishes that such individual signed the return under duress.

. . . .

(d) Allocation of deficiency.—For purposes of subsection (c).—

(1) In general.—The portion of any deficiency on a joint return allocated to an individual shall be the amount which bears the same ratio to such deficiency as the net amount of items taken into account in computing the deficiency and allocable to the individual under paragraph (3) bears to the net amount of all items taken into account in computing the deficiency.

. . . .

(3) Allocation of items giving rise to the deficiency.—For purposes of this subsection—

(A) In general.—Except as provided in paragraphs (4) and (5), any item giving rise to a deficiency on a joint return shall be allocated to individuals filing the return in the same manner as it would have been allocated if the individuals had filed separate returns for the taxable year.

(B) Exception where other spouse benefits.—Under rules prescribed by the Secretary, an item otherwise allocable to an individual under subparagraph (A) shall be allocated to the other individual filing the joint return to the extent the item gave rise to a tax benefit on the joint return to the other individual.

### 2. *Shafman's Eligibility For Election Under § 6015(c)*

 Shafman filed a joint return with Tenney in 1991, and is eligible for limitation of liability for that year because she is no longer married to Tenney. *See* 26 U.S.C. § 6015(c)(3)(A)(I). Further, there is no dispute that she meets the statutory time requirements under § 6015(c)(3)(B). The election under § 6015(c),[6] however, is

---

6. Section 6015(c) also contains provisions barring election, or increasing liability, when certain transfers of property occur. These provisions are not relevant in this case.

not valid as to items giving rise to a deficiency of which she had actual knowledge at the time she signed the return. *See* 26 U.S.C. § 6015(c)(3)(C). The Court finds Shafman had actual knowledge of her tips and wages, and therefore, the election is not valid as to that income.

### 3. Shafman's Actual Knowledge of Items Giving Rise to Deficiency

■ The IRS bears the burden under § 6015(c)(3)(C) of proving whether the electing spouse had actual knowledge of the items giving rise to the deficiency. *See Culver v. Comm'r*, 116 T.C. No. 15 (2001). Shafman clearly demonstrated a lack of knowledge as to the majority of the financial affairs of the marriage and of Tenney's business transactions in 1991, and the IRS did not prove otherwise.

■ Shafman testified that she and Tenney did not talk about finances during 1991 or 1992; that Tenney and his mother discussed finances but that Shafman "wasn't allowed to sit in;" that Shafman had no involvement at all in the record keeping or books at the Inn; that Tenney took care of the Inn's business account; that Shafman did not have access to the business account nor could she write checks on that account; that Tenney would give her cash from the Inn to pay for household expenses; that she did not have any idea about how much money the Inn was making in 1991. Shafman further testified that she did not know of the understatement of income and that although she was working part-time at the Inn, she "actually didn't know what a W–2 was at that time." Based upon her testimony, the Court is convinced that Shafman had no knowledge of the understatement of income on the 1991 return, with the exception of her own wages and tips.

Although Shafman testified that when she worked at the Inn Tenney calculated her tip income and that she gave her paychecks to Tenney, she cannot argue a lack of knowledge that she was actually earning wages and tips. However, Shafman's income from her part-time work at the Inn during 1991 is the only item giving rise to a deficiency that is attributable to Shafman.

### 4. Calculation of Shafman's Tax Liability

Shafman testified that she did not know the amount of her wages and tips in 1991. The IRS audit revealed $1150 in unreported tip income. Therefore, Shafman may not elect to limit tax liability as to $1150 of the unreported income. According to Ms. Shafman's testimony, she averaged $75 to $80 in tips working six to seven hours on the Sundays that she worked at the Inn. Based upon theses figures, Shafman averaged $11.50 per hour in tips. To earn $1150 in tips in one year, Shafman would have worked one hundred hours. At $2.13 per hour, her wages for 1991 would have totaled $213. The Court finds that Shafman may not avoid tax liability for 1991 for a total of her wages plus tips, or $1363.

### 5. Exception Where Benefit Received

The inquiry does not end here, however. Subsection 6015(d)(3)(B) excepts items from election where the spouse receives a benefit, stating that, "an item otherwise allocable to an individual under subparagraph (A) shall be allocated to the other individual filing the joint return to the extent the item gave rise to a tax benefit on the joint return to the other individual." The Court, therefore, must examine whether the unreported income items of Tenney gave rise to a benefit to Shafman so as to preclude her from avoiding liability for those items.

■ The Court is not aware of any cases that address the concept of benefit specifically under § 6015(d)(3)(B). How-

ever, an examination of "benefit" under cases decided under the other innocent spouse provisions leads the Court to the conclusion that ordinary support of the spouse seeking relief does not constitute a benefit within the meaning of § 6015(c)(3)(B). *See, e.g., Sanders v. United States*, 509 F.2d 162, 168 (5th Cir. 1975) (determination of "benefit" dependent upon each family's relative level of ordinary support; "expenses for ordinary support cannot normally put the spouse on notice of omissions from gross income.").

In the instant case, there is no evidence to support that Shafman received benefit from Tenney's omissions on the joint return other than ordinary support. Shafman and Tenney, as newlyweds, purchased a home and a car, both financed through bank loans. The vacation to the Bahamas was a result of an incentive prize earned by Tenney. The Court does not find the jewelry purchased by Tenney for Shafman, including engagement rings, to be extravagant.

 In recognition of the proposition that the IRC provision that provides innocent spouse relief from liability for income tax deficiency on a joint return is a remedial provision and is to be construed and applied liberally in favor of the person claiming its benefits, 26 U.S.C. § 6013(e), *In re Capasso*, 225 B.R. 573 (Bankr. S.D.N.Y.1998), the Court finds that Shafman did not receive a benefit from Tenney's items, so as to bar under § 6015(c)(3)(B) the allocation to Tenney of tax liability from the omission of these items to him. Shafman's liability consists solely of liability arising from the $1363 wage and tip income in 1991.

### 6. Conclusion

Subsection 6015(d)(3) provides that for purposes of subsection (c), "any item giving rise to a deficiency on a joint return shall be allocated as to individuals filing the return in the same manner as it would have been allocated if the individuals filing the return in the same manner as it would have been allocated if the individuals had filed separate returns for the taxable year." Shafman's tax liability for 1991 should be treated as it would if she had filed an individual return. Her tax liability is to be calculated based upon her $1363 of income in 1991.

### III. CONCLUSION

Finding that Shafman does not meet all criteria for relief under § 6015(b), but that she does qualify for allocation of tax liability under § 6015(c), the Court holds that Shafman shall be relieved of liability for tax including interest, penalties and other amounts for the taxable year 1991, other than any liability resulting from her $1363 wage and tip income. It is **SO ORDERED**.