T.C. Memo. 2011-144

UNITED STATES TAX COURT

TIMOTHY LEE RICHARD, Petitioner, AND SUSAN LYNN ELLIS, Intervenor
v. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 29797-08.          Filed June 27, 2011.

Adria Vondra, Scott Schumacher, and John Clynch, for petitioner.

Susan Lynn Ellis, pro se.

Patsy Clarke, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, Chief Judge:  Pursuant to section 7443A and Rules 180 and 183,[1] this case was assigned to and heard by Special

_____

[1]Unless otherwise indicated, all section references are to
(continued...)

Trial Judge John F. Dean. His recommended findings of fact and conclusions of law were filed and served upon the parties on July 15, 2010. Petitioner and respondent filed no objection to the Special Trial Judge's recommended findings of fact and conclusions of law.

Intervenor filed an objection thereto and attached a document for our consideration. The record was closed at the conclusion of the trial. We decline to reopen the record at this time for purposes of admitting this document into evidence.

After reviewing the record in this case and the report of the Special Trial Judge, we adopt the recommended findings of fact and conclusions of law of Special Trial Judge Dean as the report of the Court.

For 2004 respondent determined a deficiency of $23,483 in Timothy Lee Richard (petitioner) and Susan Lynn Ellis' (intervenor) Federal income tax and an accuracy-related penalty of $4,697 under section 6662(a). The issue for decision is whether petitioner is entitled to relief from joint and several liability pursuant to section 6015(c).[2]

---

[1](...continued)
the Internal Revenue Code as amended and in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]At trial petitioner abandoned his request for relief pursuant to sec. 6015(b) and (f). Accordingly, the Court limits
(continued...)

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by reference. When petitioner filed his petition, he resided in the State of Washington.

For 2004 petitioner and intervenor filed a joint Federal income tax return.[3] On the joint return they reported total income of $305,510, $275,821 of which was attributable solely to intervenor. On Schedule C, Profit or Loss From Business, petitioner reported net profit of $13,569 from his investment broker business.

Petitioner and intervenor married on September 18, 1985. During their marriage they maintained separate and joint bank accounts. Bank statements for their joint account were addressed in both of their names and were delivered to their home address. Both petitioner and intervenor had access to the mail.

In the years leading up to 2004 petitioner encountered a series of unfortunate medical events. He suffered a heart attack and had open heart surgery and was later diagnosed with prostate cancer. He was then forced to discontinue his work as an

---

[2](...continued)
its discussion to sec. 6015(c).

[3]Respondent notified intervenor of petitioner's request for relief, and intervenor filed a notice of intervention on Mar. 5, 2009.

investment broker because of his persistent health concerns.  The series of medical events caused a downward financial spiral for both petitioner and intervenor.  They began to experience considerable financial difficulty because of credit card debt and an overrun of home construction costs.

Petitioner and intervenor discussed possible solutions to address their financial situation.  One possible solution they discussed was borrowing from intervenor's section 401(k) retirement account (retirement account).  Following their discussion, intervenor made an Internet request for a distribution of $50,000 from her retirement account.  On March 24, 2004, the distribution was deposited into petitioner and intervenor's joint account and the bank statement[4] labeled the deposit "Fidelity Investm Pension; Susan L. Ellis-Richard".  Intervenor intended to withdraw the portion as a loan; however, she never received the paperwork or otherwise satisfied the statutory requirements to process the distribution as a loan.  Deposits into the joint account for the month of March totaled $68,172.[5]

---

[4]The joint account statement was dated Mar. 4 through Apr. 5, 2004, with an opening balance of $829.39 and a closing balance of $42,760.12.

[5]During 2004 intervenor's earnings were direct deposited into intervenor and petitioner's joint bank account.

Over the course of the next month, petitioner wrote several checks totaling $16,740.61 drawn on the joint bank account.[6] Intervenor and petitioner also paid their mortgage and other miscellaneous bills from their joint account in March 2004.

Petitioner and intervenor did not report the distribution on their 2004 joint Federal income tax return.

Petitioner and intervenor divorced on July 14, 2006.

In late 2006 petitioner and intervenor received a notice of deficiency for their failure to report as income the $50,000[7] distribution. On June 18, 2007, petitioner filed Form 8857, Request for Innocent Spouse Relief, requesting relief pursuant to section 6015(b), (c), and (f). Respondent sent to petitioner a final Appeals determination denying his request for innocent spouse relief.

                              OPINION

Generally, married taxpayers may elect to file a joint Federal income tax return. Sec. 6013(a). After making the election, each spouse is jointly and severally liable for the

---

[6]Three checks totaling $6,740.61 were presented for payment in the month of March. The final check at issue for $10,000 was presented for payment in mid-April.

[7]In the notice of deficiency respondent determined that petitioner and intervenor received and failed to report a $50,728 distribution from a retirement account. The notice of deficiency also addressed additional unreported de minimis amounts attributable to petitioner.

entire tax due.  Sec. 6013(d)(3); <u>Cheshire v. Commissioner</u>, 115 T.C. 183, 188 (2000), affd. 282 F.3d 326 (5th Cir. 2002).

Relief from joint and several liability is available to certain taxpayers under section 6015.  Under section 6015(c), an individual who is eligible and so elects may limit his or her liability to the portion of a deficiency that is properly allocable to that individual as provided in section 6015(d).  Sec. 6015(c)(1).  Under section 6015(d)(3)(A), generally, any item that gives rise to a deficiency on a joint return, e.g., the unreported early distribution from intervenor's retirement account, shall be allocated to the individual filing the return in the same manner as it would have been allocated if the individual had filed a separate return for the taxable year.

A taxpayer is eligible to elect the application of section 6015(c) if, at the time the election is filed, the taxpayer is no longer married to or is legally separated from the individual with whom the taxpayer filed the joint return to which the election relates.  Sec. 6015(c)(3)(A)(i)(I).  The election under section 6015(c) may be made at any time after a deficiency for such year is asserted and no later than 2 years after the date on which the Commissioner has begun collection activities with respect to the taxpayer making the election.  Sec. 6015(c)(3)(B).

Relief under section 6015(c) is not available to petitioner if respondent demonstrates that petitioner had actual knowledge

of the item giving rise to the deficiency.  See sec.
6015(c)(3)(C); King v. Commissioner, 116 T.C. 198, 203 (2001).
Section 6015(c) does not require that the requesting spouse know
the tax consequences arising from the item giving rise to the
deficiency.  Cheshire v. Commissioner, supra at 194.  In the case
of omitted income, however, the requesting spouse "must have an
actual and clear awareness of the omitted income."  Id. at 195.
We have observed that the applicable standard under section
6015(c) is the requesting spouse's "actual subjective knowledge".
Culver v. Commissioner, 116 T.C. 189, 197 (2001).  The
Commissioner must show, by a preponderance of the evidence, that
the requesting spouse had actual knowledge of the item giving
rise to a deficiency.  See sec. 6015(c)(3)(C); Culver v.
Commissioner, supra at 196.

The item petitioner contests that gives rise to the
deficiency and is not allocable to petitioner is intervenor's
retirement distribution.  There is no dispute that petitioner
satisfies section 6015(c)(3)(A) and (B) because he and intervenor
were no longer married when petitioner filed his petition and the
petition was filed timely.  The question remains whether
petitioner had actual knowledge at the time the joint return was
signed of "any item giving rise to a deficiency (or portion
thereof)".  See sec. 6015(c)(3)(C).

Intervenor testified that petitioner was aware of the distribution; they had discussed it before she requested the funds, he was present when she initiated the request for the distribution, and after the distribution she told him that they had received the funds. Intervenor further alleged that in early 2004 petitioner and intervenor fell several months behind on the mortgage and began receiving phone calls from their mortgage company requesting payment. After the distribution intervenor testified that they were able to make their mortgage payments, an expense of almost $15,000.[8] She further testified that after making their mortgage payments they no longer received phone calls from their mortgage company.

Intervenor admitted that before drawing large checks on the joint account petitioner would first inquire of her whether sufficient funds were available in the account and she would say "yes, we do. You can do that." She alleged, however, that with other checks, presumably those for inconsequential amounts, petitioner would not seek prior approval because "he assumed that there was a couple of hundred dollars in there to cover it." Given intervenor's substantial earnings during 2004 it would not

---

[8]The joint bank account statement intervenor provided shows a payment of only $8,421.66 made in favor of their mortgage lender on Mar. 26, 2004. See Urban Redev. Corp. v. Commissioner, 294 F.2d 328, 332 (4th Cir. 1961) (the Court may reject a taxpayer's uncorroborated, self-serving testimony), affg. 34 T.C. 845 (1960).

have been unreasonable for petitioner to assume that the joint account would contain sufficient funds to cover those inconsequential expenses.

Respondent alleges that the foregoing testimony and petitioner's own testimony show that petitioner had actual knowledge of the retirement distribution.  Petitioner and intervenor shared a joint bank account, petitioner had access to and opened the mail, and the joint bank account statement clearly labeled the deposit of the $50,000 retirement distribution. Respondent also notes that before the $50,000 deposit the balance of the joint account was $3,692.75 but that within 7 days of the $50,000 deposit, petitioner wrote checks totaling over $6,500 and within 1 month of the distribution he drew an additional $10,000[9] on the account.  Respondent concludes that petitioner knew the funds from the retirement account had been deposited into their joint account because he used those funds.

Although petitioner may have had "reason to know" of the distribution as a result of his status as a joint signatory on the joint account, the Court is not convinced that this fact alone indicates that petitioner had "actual knowledge" of the

_____

[9]The record does not contain the joint bank account statement for the month of April; therefore, petitioner's acknowledgment of the $10,000 check he drew on the joint account in April 2004 does not conclusively show that he had actual knowledge of the $50,000 distribution.  The Court is unable to conclude that a check in that amount was disproportionate as to petitioner and intervenor's income for April 2004.

distribution. Petitioner testified that he did not review the joint bank account statements and that intervenor primarily handled the finances and balanced the joint checking account, an assertion uncontested by intervenor. Furthermore, petitioner's expenditures following the distribution were not so extraordinary as to signal that he was aware of the availability of additional funds beyond intervenor's usual earnings. During March 2004, deposits into petitioner and intervenor's joint account, excluding the $50,000 distribution, totaled $18,172. The checks petitioner drew on the account in March 2004 accounted for only $6,740.61 of that amount. Attempting to circumvent this fact, respondent notes that the balance of the joint account immediately before the $50,000 deposit was less than $4,000, and that petitioner was aware of the $50,000 deposit because after the deposit he made draws on the joint account in excess of $4,000. But on March 26, 2004, 2 days after the $50,000 deposit, an additional amount of $6,602 was deposited into the joint account. Therefore, when petitioner's checks were presented for payment, the joint account contained sufficient funds to cover the checks, even without the $50,000 distribution.

Petitioner credibly testified that he was unaware of intervenor's request for and receipt of the $50,000 distribution. Petitioner admits that he and intervenor discussed the possibility of obtaining a loan from her retirement account but

states that he was unaware that she had actually obtained a distribution from her retirement account. He alleges that although he maintained a joint checking account with intervenor, she primarily wrote the checks drawn on the joint account and that he wrote checks drawn on the joint account only when he was instructed to do so by intervenor. He also admitted that he opened the mail sent to their home but would put the bank statements aside for intervenor to "deal with". Petitioner cites Culver v. Commissioner, 116 T.C. 189 (2001), claiming that his situation is analogous to that of the taxpayer in that case.

In Culver, the taxpayer's ex-wife embezzled money from her employer for a number of years while they were married and deposited the funds into their joint account in amounts ranging from $200 to $800. The embezzled income was commingled with the funds in the account, and the funds from that account were used to pay family expenses and debts. Although the taxpayer and his ex-wife maintained a joint account throughout their marriage, his ex-wife managed all of the finances; she paid the bills, wrote the checks, and maintained the bank accounts. Occasionally, he would write and sign checks drawn on the joint account, although he did not review their account or manage any of the finances during the marriage. The taxpayer and his ex-wife's joint income for the first year at issue was $63,567, and the embezzled funds constituted an additional $44,152. In the second year at issue

their joint income was $76,412 and the embezzled funds constituted an additional $59,128. In the years at issue the embezzled funds constituted an increase of more than 60 percent of the taxpayer and his ex-wife's combined annual income.

In concluding that the taxpayer lacked actual knowledge of the embezzled funds, the Court found it relevant that the taxpayer and his ex-wife's expenses were well within their resources based on their combined annual wages. Furthermore, most of their major purchases were either completely or largely financed. Therefore, the taxpayer was unlikely to have actual knowledge of the embezzled funds, even if he did have reason to know of them.[10]

Respondent alleges that the facts in Culver are distinguishable from those of this case. In Culver the taxpayer's ex-wife deposited funds in small amounts throughout the entire year, making the amounts undetectable to the taxpayer. Here, however, a one-time significant amount, $50,000, was deposited into petitioner and intervenor's joint bank account.

---

[10]In Culver v. Commissioner, 116 T.C. 189 (2001), the Court also found it relevant that the taxpayer's ex-wife corroborated her husband's testimony, affirming that she carried out the embezzlement activity without her husband's participation or knowledge.

Here, on the other hand, we note that with respect to petitioner and intervenor's testimony, we are faced with the situation of "he said, she said"; accordingly, our analysis is based primarily on what could be reliably drawn from the totality of the evidence.

Respondent asserts that it is unlikely that petitioner lacked actual knowledge of such a large one-time deposit.

As respondent suggests, $50,000 is a significant one-time deposit. When analyzed with respect to intervenor's income, however, the $50,000 distribution represented less than a 20-percent increase over her annual earnings for 2004.[11]

Circumstantial evidence may indicate that petitioner had reason to know of the distribution; however, actual knowledge cannot be inferred from reason to know. See sec. 1.6015-3(c)(2)(iii), Income Tax Regs. Although petitioner had access to the bank statements, occasionally drew checks on the joint bank account, and admitted that he "for the most part * * * would open the mail", he alleged that he did not review the mail and that intervenor was the one who paid the bills and reconciled their joint bank account.

Respondent has failed to persuade us by a preponderance of the evidence that petitioner had actual knowledge of the $50,000 distribution, and he is therefore entitled to relief from joint and several liability pursuant to section 6015(c).

Other arguments made by the parties and not discussed herein were considered and rejected as irrelevant, without merit, or moot.

---

[11]In Culver the embezzled funds represented more than a 60-percent increase over the taxpayer and his ex-wife's combined wages in the years at issue.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for petitioner</u>.