T.C. Summary Opinion 2021-36

UNITED STATES TAX COURT

TARA K. TOBIN, Petitioner, AND JEFFREY TOBIN, Intervenor <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15563-19S.                    Filed November 16, 2021.

Jonathan T. Amitrano, Rami M. Khoury, and Daniel W. Soto, for petitioner.

Jeffrey Tobin, pro se.

Albert B. Brewster II and Kim-Khanh Nguyen, for respondent.

SUMMARY OPINION

GUY, Special Trial Judge: This case was heard pursuant to the provisions

of section 7463 of the Internal Revenue Code in effect when the petition was

filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Petitioner filed a petition with the Court for review of an election for spousal relief that she submitted to the Internal Revenue Service (IRS) for the taxable years 2013 and 2014 (years in issue).  When the petition was filed, respondent had not mailed a notice of final determination to petitioner at her correct address and more than six months had passed since she filed her election for relief with the IRS.  Consequently, the Court's jurisdiction in this case arises under section 6015(e)(1)(A)(i)(II).  Petitioner resided in California when the petition was filed.

Petitioner's former spouse (intervenor) filed a notice of intervention in this action pursuant to section 6015(e)(4) and Rule 325.  He opposes relief for petitioner.

Shortly before trial, petitioner and respondent agreed that petitioner is entitled to relief from joint and several liability under section 6015(c) for the years in issue.  Petitioner and respondent filed a joint status report detailing their

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  Monetary amounts are rounded to the nearest dollar.

agreement to allocate various items of income and credits to petitioner in accordance with section 6015(d).  As part of the agreement, petitioner waived any claim to spousal relief under section 6015(b) and (f).

In the light of intervenor's opposition, we must decide whether petitioner is entitled to spousal relief under section 6015(c).

Background

## I.  Petitioner and Intervenor's Marriage

Petitioner and intervenor were married on January 8, 2011, and they are the parents of three minor children.  Petitioner and intervenor legally separated on June 14, 2017, and petitioner filed a petition for the dissolution of the marriage on August 30, 2017.  Petitioner and intervenor have not reached an agreement as to a final division of their marital assets or payment of their tax liabilities for the years in issue.

## II.  Education and Professional Experience

### A.  Petitioner

Petitioner earned a bachelor of science degree in university studies.  She initially worked as a disc jockey and regularly reported income on the couple's joint tax returns.  In early 2013, however, petitioner left the workforce and devoted her time to caring for the couple's growing family.

B. Intervenor

During the period in question, intervenor was self-employed and operated two businesses:  U.S. Polmeric (purchasing and reselling plastic tubing) and Healthy Solutions (selling weight loss supplements for Amazon Services, LLC). In addition to these activities, intervenor earned income from Nu Skin United States as part of an affiliate marketing program.

Intervenor conducted his businesses from a home office and from an associate's warehouse where he stored inventory.  Intervenor maintained business records on a personal laptop, and he stored financial records in a filing cabinet in his home office.

Petitioner did not participate in intervenor's business activities during the years in issue.  She did not review intervenor's business records because she did not know where the records were kept.  Intervenor made no effort to provide his business or financial records to petitioner before the joint tax returns were filed for the years in issue.

III. Household Finances

During the couple's marriage, intervenor was the family's primary source of income, and he managed the couple's finances.  With one exception that is not relevant here, petitioner and intervenor maintained separate personal checking

accounts throughout their marriage. Intervenor maintained separate checking accounts for his businesses and had sole signatory authority over those accounts. Funds that intervenor deposited to his business accounts were used to pay both intervenor's business expenses and the family's living expenses. Intervenor linked his personal and business checking accounts to petitioner's credit card accounts and paid petitioner's personal expenses and joint household expenses as they arose.

During the years in issue, petitioner did not review intervenor's business checking account statements, nor did she inquire about household finances in accordance with the couple's agreement that intervenor would manage their financial affairs. Petitioner was unaware of the cashflows that intervenor's businesses generated or the amount of cash reserves on hand to pay household expenses.

## IV. Preparation and Filing of Tax Returns

During their marriage, intervenor and petitioner filed joint Federal income tax returns. In the normal course petitioner provided intervenor with her tax records, and intervenor's accountant prepared the couple's tax returns. Petitioner did not have access to, or review, third-party information returns issued to intervenor before the couple's joint tax returns were filed. Petitioner never met

with intervenor's accountant, and the accountant did not review the returns with petitioner before they were filed.

Intervenor mailed the couple's joint Federal income tax returns for 2013 and 2014 to the IRS on December 15, 2014, and November 23, 2015, respectively. Petitioner could not recall signing the tax returns before they were sent to the IRS, but she consented to filing the returns because she had no reason to doubt their accuracy at the time.

A.  <u>2013 Joint Return</u>

For 2013 the couple reported total income of $37,246 (wholly attributable to intervenor's businesses), adjusted gross income of $28,614, self-employment tax of $5,263, an earned income credit and additional child tax credit, and tax due of $2,943.

There is no dispute that petitioner and intervenor failed to report several items of income for 2013 as follows:  wages of $511 and unemployment compensation of $2,352 paid to petitioner, payments of $97,409 from Amazon Services, LLC, to intervenor, and interest income of $692 comprising $44 paid by Pennymac Loan Services, $104 paid by the State of California, and $544 paid by the U.S. Treasury Department.  Respondent and petitioner agree that the above-referenced wages and unemployment compensation are allocable to petitioner.

B.  2014 Joint Return

For 2014 the couple reported total income of $35,592 (wholly attributable to intervenor's businesses), adjusted gross income of $27,077, self-employment tax of $5,029, an earned income credit and additional child tax credit, and tax due of $2,334.

There is no dispute that petitioner and intervenor failed to report the following items of income for 2014:  nonemployee compensation of $72,240 that Nu Skin United States paid to intervenor and interest income of $33 paid by Pennymac Loan Services.  Respondent and petitioner agree that none of the above-referenced items of unreported income is allocable to petitioner.

V.  Notices of Deficiency

Respondent examined the couple's joint returns for the years in issue and sent joint notices of deficiency to them determining deficiencies, additions to tax, and accuracy-related penalties.  Neither petitioner nor intervenor filed a petition for redetermination with the Court challenging the notices of deficiency, and respondent subsequently entered assessments against them.

VI.  Petitioner's Claim for Spousal Relief

On June 26, 2019, petitioner submitted to the IRS Form 8857, Request for Innocent Spouse Relief, for the years in issue.  Petitioner stated on Form 8857 that

she was aware that the original returns were filed but had no knowledge of any items of underreported income. Petitioner indicated that she was not involved in intervenor's businesses or the preparation of the couple's tax returns and that the returns were filed using information returns that she believed to be accurate to the best of her knowledge.

Intervenor submitted Form 12508, Questionnaire for Non-Requesting Spouse, to the IRS opposing petitioner's request for relief. Intervenor asserted that petitioner should be denied relief because she was aware of the items of unreported income for the years in issue and she directly benefited from the understatements of tax. At trial, however, intervenor maintained that he did not have actual knowledge of the items of unreported income when the returns were filed for the years in issue and acknowledged that, under the circumstances, it was doubtful that petitioner had actual knowledge of them.

## Discussion

Generally, married taxpayers may elect to file a joint Federal income tax return. Sec. 6013(a). After making the election, each spouse is jointly and severally liable for the entire tax due. Sec. 6013(d)(3). If certain requirements are met, however, an individual may be relieved of joint and several liability under section 6015.

Although there are three forms of relief under section 6015, our focus is limited to section 6015(c), which generally allows a separated or divorced spouse to elect to limit the liability for any deficiency assessed with respect to a joint return to the portion of the deficiency that is properly allocable to the electing spouse under section 6015(d). Section 6015(d) generally allocates the items giving rise to the deficiency as if the spouses had filed separate returns. Sec. 6015(d)(3)(A).

As is relevant here, section 6015(c) relief is available if the electing spouse establishes that (1) when the election for relief is filed, the electing spouse is no longer married to, is legally separated from, or has not been a member of the same household at any time during the previous 12 months with the individual with whom the electing spouse filed the joint return to which the election relates, (2) the election for relief was made after a deficiency was determined but no later than two years after the Commissioner began collection activities, and (3) the deficiency remains unpaid. There is no dispute that these threshold requirements are satisfied in this case.

Section 6015(c)(3)(C) provides that relief is not available if the Secretary demonstrates that the individual making an election under subsection (c) "had actual knowledge, at the time such individual signed the return, of any item giving

rise to a deficiency (or portion thereof) which is not allocable to such individual under subsection (d)". The burden of proof normally is with the Commissioner to demonstrate that the electing spouse had actual knowledge. Id.

Given that respondent agrees that petitioner is entitled to section 6015(c) relief and the only party opposing relief is intervenor, we determine whether actual knowledge has been demonstrated on a preponderance of the evidence as presented by all three parties. See Young v. Commissioner, T.C. Memo. 2012-255, at *10.

Actual knowledge "is an actual and clear awareness (as opposed to reason to know) of the existence of an item which gives rise to the deficiency (or portion thereof). In the case of omitted income * * *, the electing spouse must have an actual and clear awareness of the omitted income." Cheshire v. Commissioner, 115 T.C. 183, 195 (2000), aff'd, 282 F.3d 326 (5th Cir. 2002). The applicable standard is the electing spouse's "actual subjective knowledge." Culver v. Commissioner, 116 T.C. 189, 197 (2001). Actual knowledge is not to be inferred from evidence that the electing spouse merely had reason to know of the omitted income. See S. Rept. No. 105-174, at 59 (1998), 1998-3 C.B. 537, 595 ("[A]ctual knowledge must be established by the evidence and shall not be inferred based on indications that the electing spouse had a reason to know.").

Petitioner and respondent assert that there is no evidence that petitioner had actual knowledge of the items of unreported income allocable to intervenor at the time the returns in question were signed. Petitioner maintains that, in accordance with her longstanding agreement with intervenor that he would be the sole manager of his business activities and the family's finances, she did not have actual knowledge of any omitted income when the joint tax returns were signed.

The record reflects that petitioner did not actively participate in intervenor's businesses, did not have access to intervenor's business records, and did not have any knowledge of the income generated in connection with intervenor's business activities. Petitioner did not participate in the preparation of the couple's joint tax returns and did not review those returns with intervenor or intervenor's accountant before the returns were filed. Considering all the circumstances, including intervenor's statement that even he was not fully aware of the items of omitted income attributable to his business activities, we conclude that petitioner did not have actual knowledge of the items of unreported income in dispute when the returns for the years in issue were prepared and filed.

Consistent with the foregoing, petitioner is entitled to relief from joint and several liability for the years in issue under section 6015(c), in accordance with the

allocations agreed to by petitioner and respondent under section 6015(d). To give effect to that agreement, and to otherwise reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.