T.C. Memo. 2002-254

UNITED STATES TAX COURT

CRAIG A. PENFIELD, Petitioner, ELENA PARKER, Intervenor <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5389-01.               Filed October 7, 2002.

<u>Jan R. Pierce</u>, for petitioner.

Elena Parker, pro se.

<u>Shirley M. Francis</u>, for respondent.

MEMORANDUM OPINION

PAJAK, <u>Special Trial Judge</u>:  Respondent determined a
deficiency in petitioner's 1997 Federal income tax in the amount
of $13,666 and a section 6662(a) accuracy-related penalty in the
amount of $1,858.  Only petitioner Craig A. Penfield (petitioner)
has contested this determination.

Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After a concession by petitioner, this Court must decide whether petitioner is entitled to relief from liability under section 6015 with respect to the income tax deficiency and the section 6662(a) accuracy-related penalty.

Some of the facts in this case have been stipulated and are so found. Petitioner resided in Forest Grove, Oregon, at the time he filed his petition.

Petitioner and intervenor Elena Parker (Mrs. Parker) were married on January 5, 1991. During their marriage, petitioner and Mrs. Parker had two children. In the early years of the marriage, petitioner earned a living as a church organist and choir director, a piano teacher, a composer, and a master locksmith on antique clocks.

In 1994, petitioner was treated for depression and panic disorder by Dr. Alan Morgenstern (Dr. Morgenstern), a psychiatrist. Dr. Morgenstern referred petitioner to the Harborview Medical Center (Harborview) in Seattle, Washington. At Harborview, petitioner was evaluated by Dr. Deborah S. Cowley (Dr. Cowley). Dr. Cowley confirmed petitioner's depression and panic disorder and recommended treatment.

Petitioner continued to work until 1997. In 1998, petitioner was classified as disabled by the Social Security Administration (SSA), effective as of January 1, 1997. Petitioner currently receives monthly disability payments of $704 from SSA. Petitioner also receives $175 per month from SSA for each of his two children.

During the taxable year 1997, petitioner and Mrs. Parker often ate lunch together. They often went to the bank together. They opened their bank accounts together. They talked about money frequently. They maintained two joint checking accounts at the U.S. Bank. One account was used for household expenses and the other account was referred to as the "clock account". Petitioner and Mrs. Parker also maintained a joint money market account at the U.S. Bank during 1997.

Petitioner wrote checks from both the household account and the clock account. The household account was the regular checking account. The clock account was generally used for a small business in which petitioner purchased antiques and collectibles for resale at retail spaces rented by petitioner. Petitioner used the clock account to deposit amounts received from the sales of the antiques and collectibles. Petitioner handled all the business transactions with respect to this business which included, among other things, reviewing the clock account bank statements. Mrs. Parker only balanced the clock

account on a monthly basis.  Petitioner did not report any income from the sales of his small business on his tax return for 1997 or any other taxable year.

A number of pension withdrawals were made by petitioner and Mrs. Parker.  In 1997, Mrs. Parker made an early pension withdrawal in the amount of $39,577 from Putnam Investments. (All amounts are rounded.)  An additional pension distribution was also made from another pension fund of Mrs. Parker during 1997.  Petitioner also received a pension distribution in 1997 from his retirement fund.  Pension distributions totaling $43,783 were deposited in the joint money market account during 1997.

Petitioner and Mrs. Parker signed and filed a joint Federal income tax return for the taxable year 1997.  The 1997 return was prepared by H&R Block.  On the 1997 return, line 16a, Total pensions and annuities, was left blank.  Petitioner and Mrs. Parker reported total income of $22,835 on the 1997 return.

Petitioner and Mrs. Parker divorced on June 13, 1999.

In the notice of deficiency for the 1997 taxable year, respondent determined that petitioner and Mrs. Parker had unreported interest income in the amount of $884, nonemployee compensation in the amount of $100, royalty income in the amount of $643, and pension income in the amount of $43,783.

Petitioner filed a Form 8857, Request for Innocent Spouse Relief.  Respondent denied petitioner's request for innocent

spouse relief. Petitioner filed a timely petition and amended petition with the Court requesting relief for the taxable year at issue. Respondent notified Mrs. Parker who filed a notice of intervention.

As a general rule, spouses filing a joint Federal income tax return are jointly and severally liable for all taxes due. Sec. 6013(d)(3). However, an exception to such joint and several liability exists for spouses able to satisfy the statutory requirements for relief.

The Internal Revenue Service Restructuring & Reform Act of 1998, Pub. L. 105-206, sec. 3201(a), 112 Stat. 734, expanded the relief previously available to joint filers by enacting section 6015. Section 6015 authorizes three avenues of relief from section 6013(d)(3) joint and several liability: (1) Section 6015(b)(1) allows a spouse to escape completely joint and several liability; (2) section 6015(b)(2) and (c) allow a spouse to elect limited liability through relief from a portion of the understatement or deficiency; and (3) section 6015(f) confers upon the Secretary discretion to grant equitable relief in situations where relief is unavailable under section 6015(b) or (c).

Section 6015 provides, in pertinent part, as follows:

SEC. 6015. RELIEF FROM JOINT AND SEVERAL LIABILITY ON JOINT RETURN.

 *  *  *  *  *  *  *

(b) Procedures for Relief From Liability Applicable to All Joint Filers.--

(1) In general.--Under procedures prescribed by the Secretary, if--

(A) a joint return has been made for a taxable year;

(B) on such return there is an understatement of tax attributable to erroneous items of 1 individual filing the joint return;

(C) the other individual filing the joint return establishes that in signing the return he or she did not know, and had no reason to know, that there was such understatement;

(D) taking into account all the facts and circumstances, it is inequitable to hold the other individual liable for the deficiency in tax for such taxable year attributable to such understatement; and

(E) the other individual elects (in such form as the Secretary may prescribe) the benefits of this subsection not later than the date which is 2 years after the date the Secretary has begun collection activities with respect to the individual making the election,

then the other individual shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such understatement.

(2) Apportionment of relief.--If an individual who, but for paragraph (1)(C), would be relieved of liability under paragraph (1), establishes that in signing the return such individual did not know, and had no reason to know, the extent of such understatement, then such individual shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent that such liability is attributable to the portion of such understatement of which such individual did not know and had no reason to know.

(3) Understatement.--For purposes of this subsection,

the term "understatement" has the meaning given to such term by section 6662(d)(2)(A).

(c) Procedures To Limit Liability for Taxpayers No Longer Married or Taxpayers Legally Separated or Not Living Together.--

(1) In general.--Except as provided in this subsection, if an individual who has made a joint return for any taxable year elects the application of this subsection, the individual's liability for any deficiency which is assessed with respect to the return shall not exceed the portion of such deficiency properly allocable to the individual under section (d).

(2) Burden of proof.--Except as provided in subparagraph (A)(ii) or (C) of paragraph (3), each individual who elects the application of this subsection shall have the burden of proof with respect to establishing the portion of any deficiency allocable to such individual.

(3) Election.--

(A) Individuals eligible to make election.--

(i) In general.--An individual shall only be eligible to elect the application of this subsection if–

(I) at the time such election is filed, such individual is no longer married to, or is legally separated from, the individual with whom such individual filed the joint return to which the election relates; or

\*        \*        \*        \*        \*        \*        \*

(C) Election not valid with respect to certain deficiencies.--If the Secretary demonstrates that an individual making an election under this subsection had actual knowledge, at the time such individual signed the return, of any item giving rise to a deficiency (or portion thereof) which is not allocable to such individual under subsection (d), such election shall not apply to such deficiency (or portion). This subparagraph shall not apply where the individual with actual knowledge establishes that such individual signed the return under duress.

\*          \*          \*          \*          \*          \*          \*

   (f) Equitable Relief.--Under procedures prescribed by the
Secretary, if--

      (1) taking into account all the facts and
   circumstances, it is inequitable to hold the individual
   liable for any unpaid tax or any deficiency (or any portion
   of either); and

      (2) relief is not available to such individual under
   subsection (b) or (c),

   the Secretary may relieve such individual of such liability.

   Except as otherwise provided in section 6015, petitioner

bears the burden of proof.  Rule 142(a).  Although section

7491(a) may operate in specified circumstances to place the

burden on the Commissioner, subsection (a)(3) of that section

provides that the burden-shifting does not apply "to any issue if

any other provision of this title provides for a specific burden

of proof with respect to such issue."  Section 6015(b)(1)(C)

expressly requires the spouse electing relief to establish that

he or she did not know or have reason to know of the

understatement.  Section 6015(c)(2) and (c)(3)(C) explicitly

place the burden of proof on respondent to establish that the

requesting spouse had knowledge of the item giving rise to the

deficiency.

   We point out at this juncture that in deciding whether

petitioner has carried his burden of proof, witness credibility

is an important consideration.  See Ishizaki v. Commissioner,

T.C. Memo. 2001-318.  We are not required to accept petitioner's

uncorroborated or self-serving testimony.  Tokarski v.

Commissioner, 87 T.C. 74, 77 (1986).  Although petitioner

disputed some of Mrs. Parker's statements, we found Mrs. Parker

to be a credible witness.  Petitioner was not credible.  Our

evaluation of their testimony is founded upon "the ultimate task

of a trier of the facts--the distillation of truth from falsehood

which is the daily grist of judicial life."  Diaz v.

Commissioner, 58. T.C. 560, 564 (1972). Accordingly, our analysis

below is based primarily on, and limited by, what could be

reliably drawn from the totality of the evidence and testimony.

First, we consider whether petitioner is entitled to relief

under section 6015(b)(1).  To be entitled to relief under section

6015(b)(1), petitioner must satisfy all of the requirements of

subparagraphs (A) through (E).  There is no dispute that

petitioner satisfies subparagraphs (A) and (E).

We begin our discussion with subparagraph (C).  Section

6015(b)(1)(C) requires that the requesting spouse did not know,

or have reason to know, of the erroneous tax return item.  For

purposes of section 6015(b) relief, petitioner only contends to

lack knowledge with respect to Mrs. Parker's pension

distributions.  Respondent contends that petitioner knew, or had

reason to know, of Mrs. Parker's pension distributions and,

therefore, fails to satisfy the requirement of subparagraph (C).

When the substantial understatement of tax liability is

attributable to an omission of income from the joint return, the spouse's knowledge or reason to know of the underlying transaction which produced the income is sufficient to preclude relief under section 6015(b)(1).  Cheshire v. Commissioner, 115 T.C. 183, 192-193 (2000), affd. 282 F.3d 326 (5th Cir. 2002).  In Cheshire, the taxpayer knew about the entire amount of retirement distributions even though she did not know the distributions were taxable.

Petitioner and Mrs. Parker met with a financial adviser from U.S. Bank regarding their pension accounts.  Petitioner testified that he "had always had that concern [that their pension assets were not insured by the Federal Deposit Insurance Corporation (FDIC)]".  Petitioner talked about this subject frequently.  Mrs. Parker testified that petitioner requested that the pension distributions be made because the pension funds were "not protected by the FDIC".  He persisted in pressing the point until, as Mrs. Parker stated, he "bugged" her to make the pension withdrawals even though there was no other reason to do so.  Yet, petitioner claims he did not know about the pension fund in question, when Mrs. Parker's pension funds were withdrawn at his insistence.  Petitioner's knowledge of Mrs. Parker's pension distributions is bolstered by the fact that, like the pension distribution made in the taxable year from petitioner's own pension fund, Mrs. Parker's pension distributions were deposited

in the <u>joint</u> money market account.

Petitioner did not contend that he did not have access to the joint money market account or the monthly money market account statements. Petitioner only claimed that he "never looked at [the money market account]" monthly statements. Contradicting that allegation is the fact that shortly after filing the 1997 return and upon learning that Mrs. Parker was considering divorce, petitioner, his sister Barbara Snyder (Mrs. Snyder), and petitioner's brother-in-law withdrew approximately $69,000 from the joint money market account without Mrs. Parker's knowledge. This amount included the total pension distributions of $43,783 deposited in the joint money market account during 1997. Upon learning of the withdrawal, Mrs. Parker filed suit against all three individuals. As a result of the lawsuit, Mrs. Parker was able to retrieve nearly $58,948 of the withdrawn funds. The division of those funds was later settled in the divorce proceedings. Mrs. Parker received $40,000, and petitioner received $18,948.

Petitioner contends his mental health problems prevented him from being involved in and understanding financial matters. However, during 1997, petitioner continued to maintain his small business. On December 19, 1996, petitioner and Mrs. Parker obtained a loan in the amount of $12,200 and deposited the proceeds in the clock account used for his small business to pay

off a credit card debt. Prior to filing their 1997 return, petitioner and Mrs. Parker received tax advice from Mrs. Snyder. Mrs. Snyder had previously worked in a bank and had a financial background.

Petitioner's claim of lack of knowledge is uncorroborated. Nothing in the record in this case persuades us that petitioner lacked knowledge of Mrs. Parker's pension distributions. Based on the record, we conclude that petitioner knew about Mrs. Parker's pension distributions that gave rise, in part, to the understatement of the 1997 tax and therefore, petitioner fails to satisfy the requirement of section 6015(b)(1)(C). Accordingly, it is unnecessary to consider the remaining requirements of section 6015(b)(1). We sustain respondent's determination that petitioner is not entitled to relief under section 6015(b)(1). Moreover, because we conclude that petitioner knew of Mrs. Parker's pension distributions in their entirety, he is not entitled to apportionment of relief under section 6015(b)(2).

In general, section 6015(c) allows proportionate tax relief through allocation of the deficiency between individuals who filed a joint return and are no longer married, or who are legally separated, or who have been living apart for preceding 12 months. However, such allocation is not permitted if the Secretary demonstrates that the requesting spouse had actual knowledge, at the time the return was signed, of any item giving

rise to a deficiency (or portion thereof) which is not allocable to such spouse.  Sec. 6015(c)(3)(C).

In this case, the items contested by petitioner giving rise to the deficiency which are not allocable to petitioner are Mrs. Parker's pension distributions.  There is no dispute that petitioner satisfies section 6015(c)(3)(A)(i) because he and Mrs. Parker were no longer married when petitioner filed his petition. The question remains whether petitioner had actual knowledge, at the time the joint return was signed, of "any item giving rise to a deficiency (or portion thereof)".  Sec. 6015(c)(3)(C).

Petitioner contends that he was unaware of Mrs. Parkers's pension distributions.  Respondent contends that petitioner knew of Mrs. Parker's pension distributions and, accordingly, cannot obtain relief under section 6015(c).

The knowledge requirement of section 6015(c) does not require the requesting spouse to possess knowledge of the tax consequences arising from the item giving rise to the deficiency. Cheshire v. Commissioner, supra at 194.  However, in the case of omitted income, the requesting spouse "must have an actual and clear awareness of the omitted income." Id. at 195.  We have observed that the applicable standard under section 6015(c) is the requesting spouse's "actual subjective knowledge" and indicated that it may be established by circumstantial evidence in an appropriate case.  Culver v. Commissioner, 116 T.C. 189,

197 & n.3 (2001).  Section 6015(c)(3)(C) does not require actual knowledge on the part of the requesting spouse as to whether the entry on the return is or is not correct.  Id.  Respondent bears the burden of proving that the requesting spouse had actual knowledge.  Sec. 6015(c)(3)(C).  This Court has held that the level of respondent's burden is a preponderance of the evidence.  Culver v. Commissioner, supra at 196.

For the reasons stated above, we conclude that petitioner had actual knowledge of Mrs. Parker's pension distributions.  Accordingly, the benefits of section 6015(c) are unavailable to petitioner.

Finally, petitioner requests that the Court grant him relief from the tax and penalty under section 6015(f).  Respondent argues that he did not abuse his discretion in denying petitioner's claim for relief under section 6015(f) because petitioner did not satisfy the criteria for relief provided in Rev. Proc. 2000-15, 2000-1 C.B. 447 (the revenue procedure).

Section 6015(f) confers discretion on the Secretary (and the Secretary has delegated that discretion to respondent) to grant innocent spouse relief to an individual who cannot obtain relief under section 6015(b) or (c).  This relief is available if, taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or deficiency (or portion of either).  Sec. 6015(f)(1).

We review respondent's denial of equitable relief to petitioner under an abuse of discretion standard.  Cheshire v. Commissioner, 115 T.C. at 198; Butler v. Commissioner, 114 T.C. 276, 292 (2000).  Petitioner bears the burden of proving that respondent abused respondent's discretion in denying him relief under section 6015(f).  Jonson v. Commissioner, 118 T.C. 106, 125 (2002).

In accordance with section 6015(f), respondent has provided the revenue procedure to be used in determining whether an individual qualifies for relief under that section.  Where, as is the case here, the requesting spouse satisfies the threshold conditions set forth in section 4.01 of the revenue procedure, section 4.03, applicable to a relief-seeking spouse in petitioner's situation, provides that equitable relief may be granted under section 6015(f) "if, taking into account all the facts and circumstances, it is inequitable to hold the requesting spouse liable for all or part of the unpaid liability or deficiency."  The revenue procedure provides a partial list of positive and negative factors which respondent is to take into account in considering whether respondent will grant an individual full or partial equitable relief under section 6015(f).  No single factor is to be determinative in any particular case, all factors are to be considered and weighed appropriately, and the list of factors is not intended to be

exhaustive.

The revenue procedure provides a partial list of factors that weigh in favor of equitable relief. Petitioner primarily relies on the economic hardship factor.

In determining whether a requesting spouse will suffer economic hardship, the revenue procedure refers to rules similar to those provided in section 301.6343-1(b)(4), Proced. & Admin. Regs. That regulation generally provides that an individual suffers an economic hardship if the individual is unable to pay his or her reasonable basic living expenses.

Petitioner receives disability payments of $704 per month from SSA. Petitioner also receives $175 per month for each of his two children from SSA. Petitioner also receives $356 of food stamps each month and an energy assistance subsidy. Petitioner's only evidence of his basic living expenses was his testimony of a monthly mortgage of $107, home insurance of $72, monthly utilities of about $203, monthly car expenses of approximately $100, monthly medical expenses of approximately $23, and monthly prescription expenses of approximately $116. Petitioner presented no other evidence as to the amounts of claimed expenses.

The revenue procedure also provides a partial list of factors applicable to petitioner that weigh against equitable relief. The only items contested by petitioner giving rise to the deficiency which are not allocable to petitioner are Mrs.

Parker's pension distributions. As stated above, we find that petitioner had knowledge of Mrs. Parker's pension distributions. Petitioner also received a significant benefit from Mrs. Parker's pension distributions. Shortly after the pension distributions were deposited in the joint money market account, petitioner withdrew almost all of the money market account funds. Although petitioner was required to return some of the withdrawn funds, he ultimately received a portion of the funds in the divorce settlement. Additionally, since the taxable year 1997, petitioner has not complied with all Federal tax laws. Petitioner testified that he had never reported any sales or income from the small business he has continued to maintain.

Petitioner also failed to establish economic hardship. Despite petitioner's claim of monthly income limited to $704 from SSA, petitioner continued to maintain his small business of selling antiques and collectibles. At trial, respondent provided evidence that from September of 1998 through November of 2001, petitioner purchased over 190 items totaling more than $22,000 from just one Internet bidding service. Petitioner claims he did not receive some of the items. Even if we reduce the amount by 25 percent, $16,500 is a substantial expense.

Under the facts and circumstances presented in this case, we hold that respondent did not abuse his discretion in denying equitable relief to petitioner under section 6015(f) with respect to the unreported income items or the section 6662(a) accuracy-related penalty.

Although petitioner put most of the determinations in the notice of deficiency into issue, petitioner addressed only the section 6015 issue and did not otherwise address the correctness of the determinations.  Accordingly, having resolved the section 6015 issue against him, we deem the determinations in the notice of deficiency conceded.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.