T.C. Memo. 2017-31

UNITED STATES TAX COURT

ALLYN B. SMAALAND AND JUDY A. SMAALAND, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24265-12.                    Filed February 8, 2017.

Joe Alfred Izen, Jr., for petitioners.

M. Kathryn Bellis, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PUGH, Judge:  Respondent determined deficiencies in income tax and

penalties under section 6663 as follows:[1]

_____

[1] Unless otherwise indicated, all section references are to the Internal
Revenue Code of 1986, as amended and in effect at all relevant times.  Rule

(continued...)

[*2]

| Year | Deficiency | Penalty sec. 6663 |
|------|-----------|-------------------|
| 2003 | $808,253 | $606,190 |
| 2004 | 763,703 | 572,777 |
| 2005 | 486,799 | 365,046 |

Petitioners conceded their tax liabilities as determined by respondent for 2003 and 2004. Respondent conceded that petitioners do not have a tax liability for 2005 and are not liable for any penalties under section 6663 for any of the years in issue. The parties agreed at trial that the amounts of net operating loss carrybacks and carryforwards to be applied for 2003 and 2004 are computational issues. Therefore the only issue remaining is whether petitioner Judy Smaaland is entitled to relief from joint and several liability for the conceded liabilities for 2003 and 2004 under section 6015.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference. Petitioners resided in Montana at the time their petition was timely filed. Petitioners married in 1987. They separated for the last time in January 2003 and

---

[1](...continued)
references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

[*3] divorced in 2009.  Throughout their marriage, including for the years in issue, they filed joint returns.  Mrs. Smaaland has an associate's degree in interior design and worked primarily in that field.  Before and during the years in issue D.J. Young assisted petitioners in using a web of entities to conduct business, including Mrs. Smaaland's interior design business; to own real estate in Montana; and to hold assets in various accounts.  Because the remaining dispute between the parties turns on Mrs. Smaaland's knowledge of, and/or involvement in, certain transactions giving rise to petitioners' tax deficiencies for the years in issue, we review them in detail.

I.  Petitioners' Business and Investment Transactions

In 1998 Mr. Young formed Inside Elegance, LLC (Inside Elegance), for Mrs. Smaaland.  Mrs. Smaaland was its operating manager and president and held a 5% interest.  Cambridge Fund, a Nevada trust created by Mr. Young, held the remaining 95% interest.  Inside Elegance began operations in 1999 in Montana in the areas of new home development and interior design.

In 1999 Mr. Young formed and incorporated Allied Administrators, Ltd. (Allied Administrators), in Nevada.  Also in 1999 Mr. Young created Big Sky Land Trust with Allied Administrators as its trustee.  Both petitioners had signature authority on Big Sky Land Trust's account at First Interstate Bank in

[*4] Bozeman, Montana. In 1999 Big Sky Land Trust purchased property in Bozeman, Montana (Wildrose Lane property), that petitioners used as their personal residence. In 2000 Mrs. Smaaland became Allied Administrators' registered agent in Montana. In 2001 Allied Administrators was appointed trustee for Cambridge Fund.

Petitioners held an interest in funds in a T.D. Waterhouse Investor Services, Inc. account (T.D. Waterhouse account) for Rothburg Group, a trust in Nevis, West Indies, and an interest in funds held in a Bank of Nevis account (Bank of Nevis account) for Rothburg Group and Century Trust Co. Ltd. (Century Trust). Reinhold Sommerstedt and Century Trust were cotrustees of Rothburg Group. Petitioners were involved in business activities with Mr. Sommerstedt during the years in issue. Mrs. Smaaland knew about the T.D. Waterhouse account and knew that transfers, including to accounts for which she had signature authority, were used to fund certain property acquisitions as described below. She kept petitioners' checkbook and provided records to petitioners' tax return preparer although Mr. Smaaland handled the relationship with the return preparer.

In December 2002 petitioners sold the Wildrose Lane property for $1,169,000 through Allied Administrators, as trustee for Big Sky Land Trust. Gross proceeds of $1,169,321 were sent from Allied Administrators to the Bank of

[*5] Nevis account. Petitioners negotiated the sale and signed various documents relating to the listing and negotiations, and they received $20,000 in earnest money for the sale.

In December 2002 petitioners purchased another property in Bozeman, Montana (Peace Pipe property), for $425,500 through Allied Administrators as trustee of Big Sky Land Trust. They paid earnest money of $10,000 with two checks (one signed by each of them) drawn on Big Sky Land Trust's First Interstate Bank account, and $414,500 came from the Century Trust account at the Bank of Nevis.[2] Mr. Young, as president of Allied Administrators, signed the settlement statement and the closing instructions for the purchase, but petitioners were involved in negotiating the purchase price and signing various other documents to effect the purchase. Petitioners (who continued to live together at times after their separation in 2003) then used the Peace Pipe property as their personal residence throughout 2003 and 2004.

Adellyne Enterprises, Inc. (Adellyne Enterprises), was incorporated in Montana in September 2003. Mr. Smaaland was the sole owner of Adellyne Enterprises, and Mrs. Smaaland was its president and chief executive officer (CEO).

---

[2] The record does not identify the source of the remaining $1,000.

[*6] On November 25, 2003, Rothburg Group wired $1,640,000 from the Century Trust account at the Bank of Nevis to Security Title Co.'s account at First Security Bank in Bozeman, Montana, for Mr. Smaaland's benefit. On or about that same day Adellyne Enterprises used $1,440,000 of these funds to purchase the Budget Rent-A-Car franchise in Bozeman, Montana. During the years in issue Adellyne Enterprises did business as Budget Rent-A-Car in Bozeman, Montana. Mrs. Smaaland was president and CEO of Adellyne Enterprises and a signatory on its bank accounts. She assisted with office work and hiring, and wrote and signed checks for the company. In 2003 and 2004 Adellyne Enterprises reported losses of $1,907,312 and $153,367, respectively, which also were reported on petitioners' joint income tax returns for those years. Mrs. Smaaland began receiving a salary for "helping" with Adellyne Enterprises, after a business manager quit in 2005. A Form W-2, Wage and Tax Statement, attached to the 2004 joint Form 1040, U.S. Individual Income Tax Return, reported that Adellyne Enterprises paid wages to Mrs. Smaaland of $1,278 for the year. (No Form W-2 was attached to the 2003 or 2005 return admitted into evidence.)

Big Sky Design & Development, LLC, was formed in Montana in April 2004 with Mrs. Smaaland as its registered agent. Wildrose Investment Corp. (Wildrose Investment) was incorporated in Montana in April 2004 with Mrs.

**[*7]** Smaaland as its registered agent and sole owner, and the signatory on its checking account. In April 2004, Allied Administrators, as trustee for Big Sky Land Trust, conveyed the Peace Pipe property to Mrs. Smaaland by quit claim deed. Mrs. Smaaland did not report her receipt of this property on petitioners' 2004 Form 1040.

In April 2004 Bank of Nevis wired $1,046,664 for Rothburg Group to Heritage Bank in Bozeman, Montana, for Wildrose Investment's and Mrs. Smaaland's benefit. That same month, Mrs. Smaaland purchased another residence in Bozeman, Montana (Chapman Road property), with a $5,000 check drawn on the Big Sky Land Trust account at First Interstate Bank and $720,000 in cash. Originally Big Sky Land Trust was identified on the buy-sell agreement as the buyer of the Chapman Road property, but an addendum changed the agreement to show Mrs. Smaaland as the sole buyer. Petitioners then used this property as their residence. In May 2004 Wildrose Investment used $115,530 from its Heritage Bank account to purchase a condominium in Gallatin County, Montana (Trakker Condo). Mrs. Smaaland signed the associated documents for the purchase. In August 2004 Wildrose Investment paid $2,500 earnest money from its Heritage Bank account to purchase a lot (West Meadow lot). Wildrose

[*8] Investments eventually completed the purchase of the West Meadow lot for $125,000 in January 2005.

In February 2005 Mrs. Smaaland sold the Peace Pipe property for $599,900. The sale was not reported on petitioners' 2005 Form 1040. In 2005 Adellyne Enterprises sold the Budget Rent-A-Car franchise back to Budget Rent-A-Car for $1,280,000. In November 2005 Wildrose Investment sold the Trakker Condo, receiving proceeds of $305,879. In 2009 Mrs. Smaaland was awarded the Chapman Road property and the West Meadow lot as part of petitioners' divorce settlement.

## II. Petitioners' Tax Returns

On their 2003 Form 1040 on September 22, 2004, each petitioner listed his or her occupation as self-employed, but only Mr. Smaaland reported self-employment income. Petitioners failed to report the following taxable amounts on their 2003 Form 1040: (1) ordinary dividends from the T.D. Waterhouse account of $19,747; (2) taxable interest from the T.D. Waterhouse account of $1,519; and (3) gross receipts consisting of (a) $626,219 wired from the Bank of Nevis account to the T.D. Waterhouse account in January 2003, (b) $1,640,000 wired from the Bank of Nevis account to Security Title Co. in November 2003, and (c) $1,671,000 wired from the T.D. Waterhouse account to the Bank of Nevis account

**[*9]** in November 2003.[3] These adjustments resulted in a liability of $687,960 in income tax and $128,594 in self-employment tax, for a total deficiency of $808,253 (after reduction for the $8,301 shown on petitioners' return) for 2003.

Petitioners filed their 2004 Form 1040 on March 26, 2005. On the return Mrs. Smaaland reported that she received wages from Wildrose Investment of $40,590 and had a net loss of $9,898 from Four Cat Ranch (a horse boarding operation she owned). Petitioners failed to report the following taxable amounts on their 2004 Form 1040: (1) ordinary dividends from the T.D. Waterhouse account of $3,084; (2) taxable interest from the T.D. Waterhouse account of $56; and (3) gross receipts consisting of (a) $20,000 wired from the Bank of Nevis account to Big Sky Land Trust's account, (b) $1,046,664 wired from the Bank of Nevis account to Wildrose Investment, and (c) $1,084,200 wired from the T.D. Waterhouse account to the Bank of Nevis account. These adjustments resulted in a liability of $690,440 in income tax and $80,838 in self-employment tax, for a total deficiency of $763,703 (after reduction for the $7,575 shown on petitioners' return) for 2004.

---

[3] The stipulation of facts does not explain whether or how any of these amounts were offset in the calculation of petitioners' liability.

**[\*10]**  The only issue remaining for decision is whether Mrs. Smaaland is entitled to relief under section 6015 from joint and several liability for the foregoing liabilities for 2003 and 2004.  She contends that she is liable only for the understatement of tax attributable to the $1,046,664 wired from the Bank of Nevis account to Wildrose Investment as she is sole owner of that entity.

## OPINION

Generally, married taxpayers may elect to file a joint Federal income tax return.  Sec. 6013(a).  After making this election, each spouse generally is jointly and severally liable for the entire tax due for that taxable year.  Sec. 6013(d)(3); see Butler v. Commissioner, 114 T.C. 276, 282 (2000).  A requesting spouse, however, may seek relief from joint and several liability under section 6015(b) or, if eligible, may allocate liability under section 6015(c).  Sec. 6015(a).  If relief is not available under subsection (b) or (c), a requesting spouse may seek equitable relief under subsection (f).

This Court has jurisdiction to review respondent's denial of Mrs. Smaaland's request for equitable relief under section 6015.  See sec. 6015(e)(1).  In doing so, we apply a de novo standard of review and a de novo scope of review.  Porter v. Commissioner, 132 T.C. 203, 210 (2009).

**[*11]** I.  Relief Under Section 6015(b)

Section 6015(b)(1) provides for relief from joint and several liability for tax on a joint return if five requirements are met:

(A) a joint return has been made for a taxable year;

(B) on such return there is an understatement of tax attributable to erroneous items of 1 individual filing the joint return;

(C) the other individual filing the joint return establishes that in signing the return he or she did not know, and had no reason to know, that there was such understatement;

(D) taking into account all the facts and circumstances, it is inequitable to hold the other individual liable for the deficiency in tax for such taxable year attributable to such understatement; and

(E) the other individual elects (in such form as the Secretary may prescribe) the benefits of this subsection not later than the date which is 2 years after the date the Secretary has begun collection activities with respect to the individual making the election * * *

The requirements of section 6015(b) are stated in the conjunctive.  Alt v. Commissioner, 119 T.C. 306, 313 (2002), aff'd, 101 F. App'x 34 (6th Cir. 2004). Accordingly, a failure to meet any one of these requirements prevents a requesting spouse from qualifying for relief.  Id.  The requesting spouse generally bears the burden of proving entitlement to relief.  Id. at 311.  Respondent concedes that Mrs. Smaaland meets the requirements of subparagraphs (A) and (E) but contends that she failed to meet the requirements of subparagraphs (B), (C), and (D).

[*12]  Section 6015(b)(1)(C) requires that in signing the return, the individual seeking relief did not know and had no reason to know of the understatement.  A requesting spouse has knowledge or reason to know of an understatement if he or she actually knew of the understatement or if a reasonable person in similar circumstances, at the time he or she signed the return, could be expected to know that the return contained an understatement.  See, e.g., Pietromonaco v. Commissioner, 3 F.3d 1342, 1345 (9th Cir. 1993) (emphasizing that standard is objective, taking into account the particular circumstances), rev'g T.C. Memo. 1991-361; sec. 1.6015-2(c), Income Tax Regs.  Section 6015 thus does not protect a spouse who turns a blind eye to facts readily available to her.  Charlton v. Commissioner, 114 T.C. 333, 340 (2000).

Mrs. Smaaland held interests in the accounts involved in the transactions that gave rise to petitioners' understatements for the years in issue.  At the time she signed the 2003 and 2004 returns, she knew, or had reason to know, of the dividend and interest income from the T.D. Waterhouse account and of the transfers among the accounts to fund property and business acquisitions.

Mrs. Smaaland participated in transactions involving transfers between Big Sky Land Trust and the Bank of Nevis account.  She had signature authority on Big Sky Land Trust's bank account as the registered agent of its trustee, Allied

[*13] Administrators. She bought and sold several properties using money from the T.D. Waterhouse account and the Bank of Nevis account and used these properties as her personal residence. She later acquired sole ownership of certain of these properties.

While Mrs. Smaaland claimed to have no knowledge of the transfer of $1,640,000 from the Bank of Nevis account to fund Adellyne Enterprises' purchase of the Budget Rent-A-Car franchise, at the time of the transfer she was president and CEO of Adellyne Enterprises. She assisted with office work and hiring, and wrote and signed checks for the company. Given Mrs. Smaaland's involvement with Adellyne Enterprises and her ownership interest in the account that funded the franchise acquisition, her professed lack of knowledge as to the funds used to acquire the franchise by the time she signed the 2003 Form 1040 is not credible. See Deihl v. Commissioner, T.C. Memo. 2012-176, aff'd, 603 F. App'x 527 (9th Cir. 2015).

In deciding whether a taxpayer has carried her burden of proof, witness credibility is an important consideration. Ishizaki v. Commissioner, T.C. Memo. 2001-318; see Diaz v. Commissioner, 58 T.C. 560, 564 (1972) (stating that the process of distilling truth from the testimony of witnesses, whose demeanor we observe and whose credibility we evaluate, is the daily grist of judicial life).

**[\*14]** Moreover, we are under no obligation to accept uncorroborated and self-serving testimony. See <u>Tokarski v. Commissioner</u>, 87 T.C. 74, 77 (1986).

We did not find Mrs. Smaaland to be a credible witness, and she offered no corroborating testimony or other evidence to support her own self-serving testimony that her involvement was low level and ministerial. Even if we accept her testimony that she did not know the specific source of funds and her involvement was minimal, she certainly knew that Adellyne Enterprises had acquired the Budget Rent-A-Car franchise with funds from somewhere. As noted above, she owned an interest in the account from which funds were transferred to make the purchase, and she was involved in other transactions funded by transfers from these accounts.

On these facts, therefore, we find that Mrs. Smaaland knew of the omitted income for 2003 and 2004, resulting in the understatements of tax for those years, before she signed the tax returns for those years. Because we conclude that Mrs. Smaaland cannot satisfy the requirements of section 6015(b)(1)(C), we hold that she is not entitled to relief under section 6015(b). See <u>Alt v. Commissioner</u>, 119 T.C. at 313. And because failure to satisfy any of the subparagraphs of section 6015(b)(1) precludes relief, we need not consider the requirements of subparagraph (B) or (D).

**[*15]** We note that the record is unclear as to whether Mrs. Smaaland contests only the liability arising from the $1,640,000 transfer to acquire the Budget Rent-A-Car franchise or all of the tax liability other than that associated with the $1,046,664 transfer to Wildrose Investment. We need not parse the record on this issue as we find ample evidence to support our conclusion that she knew of the other income giving rise to the understatement as well.

## II. Relief Under Section 6015(c)

Section 6015(c) allows a taxpayer who is eligible and so elects to limit his or her liability to the portion of a deficiency that is properly allocable to the taxpayer as provided in section 6015(d). Sec. 6015(c)(1). Under section 6015(d)(3)(A), generally, any item that gives rise to a deficiency on a joint return shall be allocated to the individuals filing the return in the same manner as it would have been allocated if the individuals had filed separate returns for the taxable year. The requesting spouse bears the burden of proving how much of any deficiency is allocable to him or her. Sec. 6015(c)(2).

To be eligible for section 6015(c) relief, the requesting spouse must establish that: (1) the spouses filed joint returns for the years involved; (2) at the time the election for relief was made, the spouses were legally separated, divorced, or had not been members of the same household anytime during the previous 12

**[*16]** months; and (3) the request for relief was made within two years of the first collection activity. See sec. 6015(c)(1), (3). Moreover, no assets may be transferred between the spouses as part of a fraudulent scheme. See sec. 6015(c)(3)(A)(ii). Respondent does not dispute that Mrs. Smaaland meets these requirements.

Relief under section 6015(c) is not available if the Commissioner proves by a preponderance of the evidence that the requesting spouse had actual knowledge, at the time the return was signed, of any item giving rise to a deficiency. Culver v. Commissioner, 116 T.C. 189, 195-196 (2001). "[T]he knowledge standard for purposes of section 6015(c)(3)(C) is an actual and clear awareness (as opposed to reason to know) of the existence of an item which gives rise to the deficiency (or portion thereof)." Cheshire v. Commissioner, 115 T.C. 183, 195 (2000), aff'd, 282 F.3d 326 (5th Cir. 2002); Harrington v. Commissioner, T.C. Memo. 2012-285; sec. 1.6015-3(c)(2)(iii), Income Tax Regs. But the Commissioner need not establish that the requesting spouse knew the tax consequences arising from the item giving rise to a deficiency or how the item was treated on the joint return. Cheshire v. Commissioner, 115 T.C. at 194; Penfield v. Commissioner, T.C. Memo. 2002-254, 2002 WL 31239480, at *6; sec. 1.6015-3(c)(4), Example (3), Income Tax Regs. The Commissioner need not prove that the requesting spouse

[*17] knew the source of the item; rather, the Commissioner must demonstrate, in the case of omitted income, actual knowledge of receipt of the income. Sec. 1.6015-3(c)(2)(i)(A), (iii), Income Tax Regs. Among the factors that may be relied upon to establish actual knowledge is whether the requesting spouse jointly owned the property that resulted in the item. Id. subdiv. (iv). And a requesting spouse's actual subjective knowledge may be established by circumstantial evidence in an appropriate case. See Culver v. Commissioner, 116 T.C. at 197 n.3; Penfield v. Commissioner, 2002 WL 31239480, at *6.

We find that Mrs. Smaaland had actual knowledge when she signed the 2003 joint tax return of the receipt of funds to buy the Budget Rent-A-Car franchise. An account held for the benefit of both petitioners funded the acquisition of the franchise; Mrs. Smaaland served as an officer of Adellyne Enterprises, which acquired and operated the franchise, and performed office work and signed checks. She admitted or stipulated involvement in other property acquisitions funded by transfers from the various accounts and admitted to general knowledge of the accounts. She offered no evidence that she lacked access to account statements or other information, including statements from the various accounts. She offered no testimony or other evidence to corroborate her self-serving testimony as to her minimal involvement and lack of knowledge. As

[*18] noted above, we did not find her testimony credible, and do not find it sufficient to overcome the other evidence that supports our finding that she had actual knowledge of the receipt of funds to acquire the franchise, the dividend and interest income earned on the accounts in which she held an interest in 2003 and 2004, and the other disputed fund transfers in those years, as described above. See Penfield v. Commissioner, T.C. Memo. 2002-254 (holding that the taxpayer's uncorroborated and self-serving testimony was not enough to overcome the circumstantial evidence of his actual knowledge of omitted income). Consequently, we hold that Mrs. Smaaland is not entitled to relief under section 6015(c).

III. Relief Under Section 6015(f)

If relief is not available to a requesting spouse under section 6015(b) or (c), subsection (f) gives the Commissioner discretion to grant equitable relief from joint and several liability if "taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either)". Sec. 6015(f)(1). Mrs. Smaaland bears the burden of proving that she is entitled to relief under section 6015(f). See Rule 142(a); see also Porter v. Commissioner, 132 T.C. at 210. The Commissioner has outlined procedures for determining whether a requesting spouse qualifies for equitable

[*19] relief under section 6015(f) from joint and several liability in Rev. Proc. 2013-34, sec. 4.01, 2013-43 I.R.B. 397, 399-400. We consult these guidelines when reviewing the Commissioner's denial of relief, but we are not bound by them as our analysis and determination ultimately turn on an evaluation of all the facts and circumstances. Molinet v. Commissioner, T.C. Memo. 2014-109; Sriram v. Commissioner, T.C. Memo. 2012-91; see Pullins v. Commissioner, 136 T.C. 432, 438-439 (2011); Porter v. Commissioner, 132 T.C. at 210. We now analyze the facts under these procedures to determine whether Mrs. Smaaland qualifies for equitable relief.

The revenue procedure lists seven threshold conditions, all of which a spouse must meet to qualify for relief under section 6015(f): (1) the requesting spouse filed a joint return for the taxable year for which relief is sought; (2) the relief is not available to the requesting spouse under section 6015(b) or (c); (3) the claim for relief is timely filed; (4) no assets were transferred between the spouses as part of a fraudulent scheme; (5) the nonrequesting spouse did not transfer disqualified assets to the requesting spouse; (6) the requesting spouse did not knowingly participate in the filing of a fraudulent joint return; and (7) absent certain enumerated exceptions (none of which applies in this case), the tax liability from which the requesting spouse seeks relief is attributable to an item of the

[*20] nonrequesting spouse or an underpayment resulting from the nonrequesting spouse's income. See Rev. Proc. 2013-34, sec. 4.01. Respondent concedes that Mrs. Smaaland meets all but the last threshold condition.

Mrs. Smaaland urges us to attribute to Mr. Smaaland all but the tax liability arising from the $1,046,664 transfer to Wildrose Investment, citing in support Drayer v. Commissioner, T.C. Memo. 2010-257. In Drayer, the tax liability at issue arose from a business owned and operated by the ex-husband (Mr. Drayer) of the requesting spouse (Ms. Drayer). Ms. Drayer assisted with small tasks and performed some secretarial work for the business but was not an officer. She was never paid by the business. Id. By contrast, as we found above, Mrs. Smaaland served as an officer of Adellyne Enterprises. Moreover, the tax liabilities at issue arose not from the day-to-day operations of the franchise owned by Adellyne Enterprises but from a distribution to acquire that franchise from an account that Mrs. Smaaland coowned, or in connection with investments that Mrs. Smaaland coowned and the property transactions in which Mrs. Smaaland participated. Because the omitted income giving rise to the liabilities is attributable to Mrs. Smaaland as well as Mr. Smaaland, we hold she does not qualify for equitable relief under section 6015(f). See Rev. Proc. 2013-34, sec. 4.01. Because we find that the omitted income is attributable to her, we need not consider whether

**[*21]** imposing the liability would cause an economic hardship as Mrs. Smaaland

claims.  In any event, Mrs. Smaaland failed to offer proof to substantiate her claim.

To reflect the foregoing,

<u>Decision will be entered under</u>

<u>Rule 155</u>.